## STATE v. GRIMSHAW

(No. 1940; December 17, 1935; 53 Pac. (2d) 13)

For the defendant there was a brief and an oral argument by *H. Glenn Kinsley,* of Sheridan.

For the plaintiff there was a brief by *Ray E. Lee,* Attorney General; *Thomas F. Shea,* Deputy Attorney General; *William C. Snow,* Assistant Attorney General, all of Cheyenne, and *W. W. Tipton,* Assistant Attorney General of Laramie, and oral argument by *Mr. Shea.*

RINER, Justice.

This case is a coordinate case with No. 1941, Public Service Commission of Wyoming v. W. C. Grimshaw, this day decided. It involves alleged criminal infractions of the identical legislative Act considered in that case. Certified reserved constitutional questions from the district court of Sheridan County likewise bring the case here to obtain a determination whether certain sections of Chapter 65 of the Session Laws of Wyoming, 1935, transgress specifically enumerated provisions of the Wyoming State Constitution.

The amended information filed in the court aforesaid

against the defendant, charges violations of the chapter above mentioned in four counts. In substance these allege: The first count—that as a contract carrier, on a designated date, in Sheridan County, the defendant transported goods for another for hire, over the state highways, without obtaining from the Public Service Commission of Wyoming, (hereinafter, for convenience, usually referred to as the "Commission") a permit so to do, contrary to the requirements of the law; the second count—that as a contract carrier, on a designated date, in Sheridan County, the defendant transported goods for another for hire, over Wyoming highways, contrary to the provisions of the Act, without first having deposited with the Commission any insurance policy or other adequate security for adequate public liability and property damage for the protection of the public generally, as required by the Commission; the third count—that as a contract carrier, on a designated date, in Sheridan County, the defendant transported for hire property of another, the transportation thereof being a collect on delivery shipment, over the highways of Wyoming, contrary to the statute and the rules and regulations of the Commission, without first having furnished and deposited with the Commission adequate security for the remittance to any shipper within ten days of all moneys collected on a "collection delivery shipment," the Commission having theretofore required that he furnish such security; the fourth count—that defendant as a contract carrier, during the month of March, 1935, engaged in the transportation of the property of others by motor vehicle, over the highways of this State, and contrary to the statute and in violation of the rules and regulations of the Commission, refused and failed to certify under oath to the Highway Department, on its prescribed forms, summaries of daily records showing the total ton miles traveled by him as such con-

tract carrier during such month, and failed to report to said Highway Department the daily records of ton miles traveled by him as such contract carrier during said month.

The defendant demurred to this amended information on the ground that neither of the several counts therein set forth charged any offense under the law, inasmuch as Chapter 65, Session Laws of Wyoming 1935, upon which the prosecution was based, is invalid, because the provisions of that chapter "which purport to apply to the facts alleged in each of said counts" violate the State and Federal Constitutions, the several sections of the Act and the provisions of these two fundamental charters of government they are asserted to contravene being given.

The first five questions reserved for decisions by this Court, upon the issues thus formed, are identical with those similarly numbered in Public Service Commission of Wyoming v. W. C. Grimshaw, supra, and set forth in the opinion filed in that case. The eighth reserved question here is also identical with the tenth stated question there considered. The remaining reserved questions are:

"6. Are Sections 4, 10, 40, 61, 63, or any of them, of Chapter 65 of the Session Laws of Wyoming, 1935, violative of Section 6, Section 7, Section 33, Article I, or of Section 1, Article III of the Constitution of Wyoming, or any of them?"

"7. Is Section 65 of Chapter 65 of the Session Laws of Wyoming, 1935, violative of Section 6 or Section 7, Article I, or of Section 1, Article III, or of Section 1, Article II of the Constitution of Wyoming, or any of them?"

"9. Is that portion of Section 14 of the Session Laws of Wyoming, 1935, that the Commission shall require all contract motor carriers to deposit or provide for adequate security for the remittance to a shipper with-

in ten days of all moneys collected on a collect on delivery shipment, and Section 65 of said Chapter 65 of the Session Laws of Wyoming, 1935, making it a misdemeanor to violate any order of the Commission, violative of Section 5 of Article I of the Wyoming Constitution?"

We shall here apply the rules referred to in the coordinate civil case aforesaid, as governing the consideration of reserved constitutional questions in this Court, and it will, of course, be unnecessary to pursue matters herein fully covered there. The first five reserved questions submitted herein will be accordingly answered in the negative. The eighth question will also be replied to in the negative, though this response must necessarily be qualified by what will be hereinafter said concerning certain provisions embraced in Sections 40 and 65 of Chapter 65 aforesaid.

The sections of that chapter involved in reserved question number 6, supra, so far as the defendant upon the record here is affected thereby, provide: Section 4,—

"All motor carriers as herein defined engaged in transportation operations on the highways of this state are hereby declared to affect and be vested with a public interest * * * * * * and the power to supervise and regulate all such motor carriers is hereby delegated to the commission."

The provisions of Section 10 thereof have already been described in our discussion of the reserved questions set out in Case No. 1941, supra. Section 61 declares that:

"It shall be unlawful for any * * * motor carrier, when rates or fares to be charged by motor carriers have been fixed by the commission by virtue hereof, to charge, demand, receive or collect any less rate or fare than that as fixed by the commission or by any device, scheme or subterfuge rebate any part or all of said rate."

Section 63 is to the following effect:

"No rate fixed by the commission and no route fixed by a certificate or permit shall be changed except by order of the commission after a hearing held for that purpose, at which hearing all interested parties have been given notice as required for hearings on applications."

These sections are each and all asserted to be violative of Sections 6, 7 and 33 of Article I and Section 1 of Article III of the Wyoming Constitution, whose language has been quoted in the opinion filed in the coordinate civil case aforesaid.

It is well settled that a declaration by the legislative branch of the government that a business conducted by citizens of the commonwealth is affected with a public interest, is not conclusive of the question whether it is so or not. The matter is one which is always open to judicial inquiry. See Tyson & Bro. et al. v. Banton, 273 U. S. 418, 47 S. Ct. 426, 71 L. Ed. 718, 58 A. L. R. 1236, 1242; Wolff Packing Co. v. Court of Industrial Relations, 262 U. S. 522, 43 S. Ct. 630, 67 L. Ed. 1103, 27 A. L. R. 1280. But we consider in the instant case that the defendant's status as a contract motor carrier is definitely affected with a public interest and that this fact has been sufficiently demonstrated by what was said in Case No. 1941, supra. It will not be necessary to again discuss Section 10 of Chapter 65 in view also of what was said in the last mentioned case. The provisions of Sections 61 and 63, above given, are quite obviously for the purpose of appropriately controlling contract carriers in their relations with common carriers, and that matter, too, has been quite fully reviewed in the other coordinate case, the conclusion being that statutory provisions of this nature in the chapter aforesaid were not improper as contravening the suggested constitutional provi-

sions. We accordingly answer question number six in the negative, as, however, that answer may be qualified by what is otherwise said herein. Section 40 of said Chapter 65, which is also included in the reserved question just disposed of, is not to be regarded as embraced in the response indicated above thereto, for we prefer to discuss that section in connection with Reserved Questions 7 and 8, dealing with the validity of Sections 65 and 56 when scrutinized in the light of the several provisions of the Constitution of this State in those questions enumerated.

The pertinent provisions of Section 40 of the Act now in question are:

"It shall be the duty of the commission to administer the provisions of this Act so as to accomplish the objectives thereof, and in so doing the commission is vested with power and authority to * * * * promulgate such rules and regulations as it deems necessary to accomplish such purposes whether or not herein specifically mentioned."

The subsequent Section 56, after vesting power in the Commission or the Highway Department to initiate civil proceedings to enforce obedience to or for the violation of any of the provisions of the Act, adds:

"or of their orders, rules or regulations, and may cause criminal prosecution of anyone violating such provisions, orders, rules or regulations, and the county attorneys of this state shall prosecute all such violations the same as in other criminal cases, and other person affected by a violation of the provisions of this Act, the orders, rules or regulations of the commission or Highway Department, may seek redress therefrom by appropriate remedy in the courts of this state, or before the commission."

Section 65 enacts in part that:

"It shall be unlawful for any motor carrier, its officers, agents or employees, or any other person to

violate any provisions of this Act, or fail to obey, observe or comply with any order, decision, rule or regulation of the commission, or procure, aid or abet any corporation or person in its or his failure to obey or observe such order, decision, rule or regulation, and any person so offending shall be guilty of a misdemeanor and shall be punished by a fine of not less than Twenty-Five Dollars ($25.00), nor more than One Hundred Dollars ($100.00), or by imprisonment in the county jail not to exceed six months, or both in the discretion of the court."

The three sections last mentioned, when examined in their application to the first, second and fourth counts of the amended information and tested by the enumerated provisions of the Wyoming Constitution, which it is urged render them void, would not appear, in view of what is said in Case No. 1941, supra, to be subject to the criticism thus advanced. The acts charged against the defendant would seem only to be definite and specific violations of the requirements of the legislative Act set out in Chapter 65 aforesaid, requirements which in the case last above mentioned we have pointed out were entirely legitimate according to current authority and our fundamental law. We do not construe them to be charged as violations of "rules and regulations" of the Commission solely. If rules and regulations of the Commission only were involved, it might well be that another result would necessarily have to be reached, as will presently appear.

Elaborating the point just referred to, and viewing the chapter aforesaid in its use of penal provisions to compel obedience to the Act, we regard it as proper to refer to the quoted language of Section 40, supra, which undertakes to vest in the Commission power to "promulgate such rules and regulations as it deems necessary to accomplish such purposes (i. e., the objectives of the Act) *whether or not herein specifically mentioned.*" We have italicized the significant phras-

ing of the clause. Such broad delegation of power, coupled with the criminal consequences imposed by Sections 56 and 65, when viewed literally, is traveling into the shadow of constitutional inhibitions against delegation of legislative power (Wyoming Constitution, Article II, Section 1, and Article III, Section 1), as the following cited recent authorities would indicate.

In People v. Belcastro, 356 Ill. 144, 190 N. E. 301, 92 A. L. R. 1223, citing 1 Sutherland on Stat. Const. (2d Ed.) page 148, the court said: "If the Legislature leaves to administrative officers the determination of what the law shall be, or to determine what acts are necessary to effectuate the law, such delegation of authority is void." See also People v. Yonker, 351 Ill. 139, 184 N. E. 228.

The case of State v. Larson, 10 N. J. Misc. 384, 160 Atl. 556, was one where the defendant was indicted for violation of the rules and regulations of the State Aviation Commission. That body was vested by statute with power to make and establish "air traffic rules" conforming as nearly as practicable to those in the Federal Air Commerce Act and also "uniform field rules for airports." The statute further provided that "any person who violates any of the provisions of this act or any rule or regulation thereunder shall be guilty of a misdemeanor." Upholding the defendant's challenge upon constitutional grounds as to the law under which the Aviation Commission put into effect the rules charged to have been violated by the defendant, the court said:

"The substantial question therefore is whether the New Jersey Legislature is permitted by the Constitution of this state and that of the United States to convict a person of a crime, when it has fixed no standard of conduct to be conformed to by the citizen, but has left that standard to be fixed by the regulations of a subordinate administrative authority, either in its un-

trammeled discretion, or to conform substantially to the legislation of another sovereignty, such legislation being referred to in the act, but not incorporated therein.

"Our form of government, both federal and state, is based upon the fundamental concept of the separation of the powers, legislative, executive, and judicial. Each of these three branches can exercise its own power only. This is expressly set forth in our state Constitution, which provides that 'the legislative power shall be vested in a senate and general assembly.' Article 4, § 1, par. 1. The only exception to this is in the case of municipal corporations, which from time immemorial have been authorized to exercise legislative functions at common law, such common-law rule and historical fact being deemed a condition implied in the Constitution. Otherwise, however, no legislative function can be delegated by our Senate and General Assembly.

"But, while the establishment of principles or standards of conduct is the essential function of the lawmaking body, which cannot be delegated, the application of those principles or standards to facts as they arise, and the determination as to whether or not those facts exist, is a function of law enforcement, which can therefore be delegated to an administrative body. This distinction is well brought out in the leading case of Fields v. Clark, 143 U. S. 649, 12 S. Ct. 495, 505, 36 L. Ed. 294, where the court says: 'The legislature cannot delegate its power to make a law, but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend.' See further the comparatively recent case of Hampton, Jr., & Co. v. U. S., 276 U. S. 394, 48 S. Ct. 348, 72 L. Ed. 624, which collates the authorities generally in this regard. Accordingly, Congress in exercising legislative control over intrastate carriers by the fixing of general principles can yet delegate fact-finding and law-enforcing, i. e., rate-making, power to the Interstate Commerce Commission. Interstate Commerce Commission v. Illinois Central R. R., 215 U. S. 452, 30 S. Ct. 155, 54 L. Ed. 280. So again the state of New Jersey can delegate

rate-making power to the State Public Utilities Commission. W. J. & S. Railroad v. Board of Public Utility Com'rs., 87 N. J. Law, 170, 94 A. 57. A delegation of power over transportation by air can, of course, be made similar to that over transportation by land or water.

"But this is exactly what the State Aviation Act fails to do. As seen above, it fixes no criterion whatever to be adhered to by the state aviation commission in establishing its regulations for 'uniform field rules.' In authorizing such regulations, it therefore violates the fundamental concept of our constitutional law as to the separation of the powers. It may well violate also the due process clause of the Fourteenth Amendment to the Federal Constitution, since it creates a crime, without setting up an ascertainable standard of conduct for the citizens to conform to. U. S. v. Cohen Grocery Co., 255 U. S. 81, 41 S. Ct. 298, 65 L. Ed. 516, 14 A. L. R. 1045."

In State v. Retowski, 175 Atl. (Del.) 325, it appeared that the Delaware Liquor Commission was authorized by statute relative to the taxes which the law imposed to "make and publish such rules and regulations with respect to the collection and/or payment of such tax or taxes as it may deem proper and all such rules and regulations that are not inconsistent with the provisions of this Act shall have the force and effect of law." The statute then provided: "Any violation of any such rules and regulations shall constitute a misdemeanor and any 'person' convicted of any such violation shall be punished by" a fine in a sum not exceeding a fixed amount. The Commission promulgated a rule declaring it unlawful for any person to keep in his possession alcoholic liquor in any container having a capacity of more than one quart, unless the taxes provided by the law were paid and stamps evidencing such payment were affixed to the container. The defendant was indicted for a violation of this rule. Rejecting the State's contention that the

rule in question was an administrative rule merely, and within the power of the Commission to make, the court held the rule void as legislative in character, writing in the course of the opinion filed:

"Considering the rule as a whole, or in its several parts, it is impossible to view it as a reasonable administrative regulation within the scope of the power to make rules for the payment and collection of liquor taxes, or indeed to regard it other than as having legislative character.

\* \* \* \* \*

"The rule palpably is aimed at a situation which, in the opinion of the commission, is not covered adequately by the statute. It was designed to discourage and prevent as far as possible the illicit purchase and sale of alcoholic liquor. To accomplish this end, the commission has added to and extended the statute. It has sought, under the guise of facilitating the collection of taxes, to transform acts, of themselves innocent, into criminal offenses. Keeping alcoholic liquor in a container having a capacity of more than one quart is not contrary to any provision of the statute nor is it an offense against morals. One may have a barrel of whiskey in his cellar which he possesses legally in all respects. He may, for all proper purpose, desire to keep part of it in more convenient receptacles, for instance, a decanter or other container, and this he may not do under the rule, if the container is of more than one quart capacity, unless he affixes to such container, and to each of them, stamps evidencing the payment of the taxes. Nor may one, for his own convenience, for instance in travelling, or as an act of neighborly kindness, or from any other necessity, transfer liquor from the original container into any other container. It is urged that these provisions are directed against the wrongdoer. That may be true, but the rights of the law abiding citizen are not to be unnecessarily ignored. If the paramount necessity exists to denounce acts done every day by innocent citizens as criminal offenses, that necessity should be expressly declared by the legislature, and not by a rule adopted and promulgated under a power given to make administrative rules for the collection of taxes."

Goodlove v. Logan, 251 N. W. 39, 217 Iowa 98, was a case where the statute undertook to confer upon the Iowa State Highway Commission authority to adopt rules and regulations as to stopping of cars on paved highways, and enacted also that a "failure to comply with such rules, regulations or orders shall be deemed a misdemeanor and shall be punishable accordingly." The Commission issued and adopted a rule reading: "No vehicle shall stop on the traveled portion of any primary road except when such vehicle is disabled and unable to proceed without emergency repairs or change of tires." The action being one for negligence, the rule in question was offered in evidence by the defendant. It was received by the trial court, and as the facts disclosed that plaintiff's decedent had violated this rule, it was adjudged that he was guilty of negligence as a matter of law. The jury was accordingly so instructed. Reversing this judgment and holding the statute unconstitutional, the Supreme Court of Iowa very forcibly and very pertinently, as we think, said:

"Thus, an analysis of every case cited by the appellant presents the situation only where the details of the statute are left to be administered by a board or commission in applying the law as expressed in the statute. If the Legislature had a right to pass section 5066, granting to the highway commission the authority to adopt rules and regulations governing the stopping of cars upon a paved highway, the Legislature can also empower the highway commission to pass rules and regulations governing the speed and right of way, and all duties of automobile drivers. If the Legislature can delegate to the highway commission the right to do these things, then, of course, the Legislature can delegate the same power to the board of control, to the insurance commissioner, superintendent of banking, and all other administrative departments of the state may be likewise empowered to enact rules and regulations to be given the force of statutes, which said commission might in their judgment determine to

be for the general protection of the public. Once such bureaucracy has fastened itself into the life of legislative power, little else need be done by the Legislature than to meet and create boards. The Legislature has no such right to delegate to the highway commission legislative power to pass rules and regulations concerning the use of primary highways of this state by the people of this state, such as rule VII. If the Legislature in its wise judgment desires to pass such a statute, it, of course, has the right and authority to do so, for the Legislature is composed of the representatives of the people; it is chosen by the people for the purpose of making the laws of this state. The legislature cannot transfer the power of making laws to any one else, or place the right to make laws anywhere but where the people have placed it. The highway commission is appointed by the Governor of the state for the purpose of administering the laws and not for the purpose of making the laws. If the right were given to the highway commission to make the laws governing the highways of this state, how is the individual using the highways to know what rules and regulations the highway commission passes? The highway commission meets at various and different times. It might pass some rule or regulation today and revoke it next week. There is no way that the people throughout this state could know just what were the rules and regulations that the highway commission adopted. About the only way that one could be certain as to what the rules and regulations were—if the highway commission had the right to pass them—would be to telephone to the highway commission every time one started on a journey, and, if that journey were to be a long one, a wise and cautious individual would put in a telephone call before starting on the return journey.

"Thus it seems to us that the Legislature under Code § 5066, has left to the highway commission first to say whether there shall be any law, and, second what that law shall be. This is a delegation of legislative power, and same is unconstitutional."

These cases outline with reasonable clearness the limits within which rules and regulations of an administrative board, such as is charged with the adminis-

tration of Chapter 65 here invoked, may be properly made. Obviously they cannot pass without the boundaries indicated by the legislative Act, and each case will in a large measure have to be adjudged according to its own facts, 35 Harvard Law Review 952, 956.

We are not unaware that some courts have kept in mind chiefly the ever insistent claim that the modern needs of efficient government compel increasing delegation of details to administrative bodies. These courts have gone far in their support of delegation of legislative authority. When such "details" go to the extent of prescribing the standard of conduct whereby a citizen of the state may be adjudged a criminal and deprived of his liberty, it is our view that the time has arrived to keep in mind also the great fundamental principles in American government prescribing separation of executive and legislative powers. In such case we may not lose sight of the centuries of strife necessary to accomplish that separation. Recalling the ease with which those who are chosen by the people for the express purpose of making the law are convened and statutes enacted, it is not, we think, an undue burden for them to clearly define what "details" of this character shall be enforced in the commonwealth as crimes. Bureaucracy may easily become the cloak for "absolute arbitrary power" over the life and liberty of the citizen, something which both the framers of our constitution and the staunch men and women of that generation wisely declared "exists nowhere in a republic."

Additionally, in this connection, it may be noted that Section 65 aforesaid makes it a criminal offense to fail to obey or comply with an "order" or "decision" of the Commission. Sections 41 to 55, inclusive, of the chapter in question provide for certain hearings, upon which orders and decisions by the Commission shall be made. These sections also definitely provide for

appeals from such orders and decisions to the district courts and from those courts to this tribunal, in order to procure due review of them. A pertinent and serious query at once arises in the mind, "When will a violation of such an order or decision become a crime?" If immediately the order or decision is rendered, it is, of course, evident that it may subsequently be modified, reversed or wholly held for naught by the reviewing courts. It would seem reasonably clear that no fixed standard of duty and settled definition of the punishable offense could in such case exist. If no appeal at all were taken, then a misdemeanor would exist and be subject to punishment in one case, and in another, upon the same state of facts, which was subjected to review and the decision overthrown, there would be no criminal offense. We hardly think the Legislature may under constitutional guaranties treat human liberty so lightly. It is to be observed further that Section 56 of the Act, in terms, seems to authorize criminal prosecution for a violation of "orders, rules and regulations" of the Highway Department, as well as those of the Commission. Yet neither that section, nor any other in the chapter, appears to prescribe penalties for infractions of them.

This Court in State v. A. H. Read Co., 33 Wyo. 387, 240 Pac. 208, quoting from United States v. Reese, 92 U. S. 214, 23 L. Ed. 563, used the following significant language:

" 'If the legislature undertakes to define by statute a new offense, and provide for its punishment, it should express its will in language that need not deceive the common mind. Every man should be able to know with certainty when he is committing a crime. * * * It would certainly be dangerous if the legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large. This would, to some extent, substitute the judicial for the legislative department of the government.' "

Strictly upon the record before us, we accordingly answer both question No. 6 as it relates to Section 40 of the Act, and question No. 7 in the negative, as these responses may be qualified by what has hereinbefore been said.

Reserved Question No. 9, as already intimated by the discussion contained above and in Case No. 1941, need not be answered, holding as we do that Section 14 as regards the portion thereof covered by this question and relating to collect on delivery shipments is violative of Section 6 and Section 33 of Article I of the Wyoming Constitution.

KIMBALL, Ch. J., and BLUME, J., concur.