# RUSSELL v. WALTER SCHULTZ WHOLESALE GROCERY CO.

(No. 1991; February 2, 1937; 64 Pac. (2d) 610)

For the appellant there was a brief and the cause was argued orally by *Joseph Garst* of Douglas.

For the respondent, there was a brief by *Durham & Bacheller* of Casper, and oral argument by *E. Paul Bacheller, Charles M. Crowell* of Casper also appearing.

128

KIMBALL, Justice.

Plaintiff is a common motor carrier of freight operating between Casper and Cheyenne, Casper and Lusk, Casper and Newcastle, in Wyoming, subject to the provisions of Chapter 65 of the laws of 1935. Defendant is a wholesale grocer of Casper. It sells to various retail merchants throughout central and northern Wyoming, and sometimes delivers the goods to its customers in trucks which it operates under permit issued to it as a private motor carrier subject also to the provisions of the law of 1935.

Plaintiff, as an intrastate common motor carrier, is required to charge rates fixed by the Public Service Commission. Defendant frequently sells and delivers goods to merchants along the route served by plaintiff, and charges the buyers the price of the goods at Casper plus the estimated cost of transporting the goods in defendant's trucks from Casper to the buyers' places of business. This estimated cost of transportation is less than plaintiff as a common motor carrier would have to charge for the same service. Plaintiff, asserting that defendant in following the practice above described is operating its trucks as a contract motor carrier, brought this action for injunction to prevent the continuance of the practice. The judgment of the trial court was for defendant and the plaintiff appeals.

By evidence or admission it was shown that defendant hauls only goods sold by it. It is not in the transportation business. The deliveries of which plaintiff complains are made to customers on orders obtained by defendant's salesmen. When the orders are received at Casper, the ordered goods are separated from defendant's other goods in its warehouse, wrapped and marked for shipment, and then shipped with an invoice and delivery slip which show separately the price of the goods at Casper and the charge for transportation. These two items which together make up the amount charged to the customer, are kept separate for defend-

ant's convenience and information. Expenses of delivering goods are treated as "cost of operation."

Chapter 65 of the laws of 1935 provides for the regulation of motor carriers which are divided into three classes: common, contract and private. The question for decision is whether defendant is a contract or a private carrier. The question is important because, if defendant is a contract carrier operating in competition with plaintiff, the Public Service Commission should require defendant to charge a rate not less than plaintiff is required to charge for the same service. Sections 11 and 14; Public Service Commission v. Grimshaw, 49 Wyo. 158, 180, 53 P. (2d) 1. It is apparently conceded that, if defendant is a private carrier, the act does not provide for regulation of its rates. We therefore assume that the legislature did not intend to provide for the regulation of the rates of private motor carriers, as defined in the act, and we shall not consider any question as to its power to do so. See State v. Grimshaw, 49 Wyo. 192, 200-201, 53 P. (2d) 13; Stephenson v. Binford, 287 U. S. 251, 278.

Section 2 provides that for the purpose of the act, unless the context otherwise requires, the terms contract motor carrier and private motor carrier shall be construed respectively to mean:

"(o) Contract Motor Carrier. Any motor carrier, other than a common motor carrier, who engages in the transportation of * * * property of others by motor vehicle on and over the highways of the state, for compensation, under contract, expressed or implied."

"(p) Private Motor Carriers. A person engaged in the transportation, by motor vehicle or vehicles on and over the highways of the state, of property sold or to be sold by him, * * *, in the furtherance of any private commercial enterprise * * *."

We think the trial judge correctly decided that defendant is a private motor carrier as thus defined.

There can be no doubt that defendant operates its trucks solely for the transportation of property sold by it in the furtherance of a private commercial enterprise.

Plaintiff, in seeking to have defendant brought within the statutory definition of a contract motor carrier, contends that the evidence shows that defendant receives compensation for the delivery of the goods sold by it, citing Collins-Dietz-Morris Co. v. State Corp. Com., 154 Okla. 121, 7 P. (2d) 123, 80 A. L. R. 561 and New Way Lumber Co. v. Smith, (Tex.) 96 S. W. (2d) 282. We think the fact that defendant receives compensation for delivering the goods is immaterial if it is a private motor carrier as defined by Section 2 (p). The definition says nothing about compensation, and describes those who do, as well as those who do not, receive compensation for the kind of transportation in which the defendant is engaged.

Plaintiff, however, contends not only that defendant is transporting goods for compensation, but also that the transported goods are the property of others within the definition, Section 2 (o), of a contract motor carrier. It is argued that the property in the goods sold by defendant is transferred to the buyers when the goods are selected and prepared for shipment at defendant's warehouse, and that deliveries thereafter made are transportation of the property of the buyers. Rule 1, of Section 19 of the Uniform Sales Act, § 98-703, R. S. 1931, is relied on. If we thought the time of the transfer of property in the goods sold by defendant were material we probably should have to hold that Rule 5, instead of Rule 1, of the cited section of the sales act controls, and that property in the goods was not transferred to the buyers until the goods were delivered to them by defendant. See Williston on Sales (2d ed.) § 280. But we need not decide this point, as we do not think the status of defendant as a private motor car-

rier would be affected by the fact that property in the transported goods may have passed to the buyers before the transportation began. The goods are "property sold by" defendant, within the meaning of Section 2(p). Sections 2(o) and 2(p) are intended to define and distinguish two classes of motor carriers. To carry out this intention we must hold that the transportation of goods sold by a private carrier, is not transportation of "property of others," within the meaning of Section 2(o). See Lewis' Sutherland, Stat. Const. (2d ed.) §§ 346, 347.

The judgment is affirmed.

BLUME, Ch. J., and RINER, J., concur.