

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-0912-08

### THE STATE OF TEXAS

### v.

### MICHAEL JOSEPH RHINE, Appellee

### ON APPELLEE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE SECOND COURT OF APPEALS
### DENTON COUNTY

**KELLER, P.J., filed a concurring opinion in which MEYERS, HERVEY, and HOLCOMB, JJ., joined.**

We granted review to determine whether the penal offense with which appellee was charged—violation of outdoor burning regulations[1] for which a criminal penalty is attached under the Water Code[2]—violates the separation-of-powers provision of the Texas Constitution.[3] In support

---

[1] *See* TEX. ADMIN. CODE, Title 30, Chapter 111.

[2] TEX. WATER CODE §§7.177(a)(5), (b) and 7.187(1)(B), (2)(C).

[3] TEX. CONST., Art. II, §1.

of his ground for review, appellee argues that the court of appeals engaged in an improper "lockstep" analysis with federal decisional law that was based on a Texas Supreme Court case that made the same mistake. In a wide-ranging discussion, he quotes from James Madison and Thomas Jefferson, traces the development of the doctrine of separation of powers from John Locke to the Continental Congress, examines the historical developments surrounding the framing of the constitutions of the United States, Virginia, Kentucky, and Texas, and evaluates the jurisprudence of Texas and other states. From this discussion, appellee argues that Madison and Jefferson had rival conceptions of the doctrine of separation of powers. He contends that Madison's more liberal, "balance of power" approach ultimately prevailed with respect to the United States Constitution, which has no express separation-of-powers provision, but that Jefferson's formalist, strict separation approach has prevailed in many states, including Texas, that adopted an express separation-of-powers provision modeled after the one Jefferson formulated. Appellee argues that the strict separation approach prohibits the Legislature from delegating to an executive agency the ability to enact rules that fix elements of criminal offenses. He argues alternatively that, under either a restrictive or liberal approach, the legislative delegation fails to provide sufficient guidance to the administrative agency on what types of outdoor burning may be prohibited.

Though the Court spends a great deal of time setting forth various statutory provisions and administrative regulations,[4] it addresses in only the most cursory fashion appellee's argument for a more restrictive approach to the doctrine of separation of powers, citing a few cases and saying that his claim of strict interpretation ignores precedent from this Court and the Texas Supreme Court.[5]

---

[4] *See* Court's op., *passim*.

[5] *Id.* at 3.

We have stated that "[a]s a general proposition, reviewing courts ought to mention a party's number one argument and explain why it does not have the persuasive force that the party thinks it does."[6] Especially considering the quality of the briefing in this case, and the potentially far-reaching consequences of our decision, it is essential to address appellee's principal contentions. Since the Court does not do so, I shall.

## A. Preservation of Error

But first I address a preservation-of-error argument advanced by the Texas Commission on Environmental Quality ("TCEQ") in its amicus brief. Though the argument is raised for the first time on discretionary review, "preservation of error is a systemic requirement that must be reviewed by the courts of appeals regardless of whether the issue is raised by the parties," and so inquiry even at this late stage may be appropriate.[7] Moreover, we have "recognized the desirability of avoiding the adjudication of constitutional issues when at all possible," and great care should be taken especially when resolution of the constitutional issue "threatens to overturn the acts of another branch of government."[8]

TCEQ contends that appellee has forfeited his right to urge his restrictive interpretation of the doctrine of separation of powers because he did not raise it before the trial court[9] and because

---

[6] *Sims v. State*, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

[7] *Haley v. State*, 173 S.W.3d 510, 515 (Tex. Crim. App. 2005).

[8] *Pena v. State*, 191 S.W.3d 133, 136, 136-37 (Tex. Crim. App. 2006).

[9] Appellee claims that the issue was raised because he objected at trial to the State's reliance on federal decisional authority and the trial court suggested that federal authority was "persuasive" and "not mandatory on us." I do not address this contention because, below, I accept his legal argument that he had no obligation to preserve error.

the court of appeals did not address it.[10]  It is true that, by relying solely upon federal constitutional authority at trial, an *appealing* party can forfeit a claim that the Texas Constitution provides more expansive protections.[11]  But appellee won at trial, so the appellate court could affirm on a legal theory not presented to the trial court.[12]  And because appellee did not even have to file a brief in the court of appeals, the failure of the court of appeals to address his legal contentions does not preclude us from doing so.[13]

## B. Separation of Powers

### 1. *Is the Texas Constitutional Provision More Restrictive?*

The United States Constitution contains no express separation-of-powers provision. Separation of powers is implied through the federal constitution's structure, dividing government into three branches, and through vesting into each branch its particular power, legislative, executive, or judicial, as the case may be.[14]  With respect to legislative power, the United States Constitution provides that "[a]ll legislative Powers herein granted shall be vested in a Congress of the United

---

[10] TCEQ does not dispute that appellee raised the issue before the court of appeals but claims that the court of appeals correctly refused to address the issue because he had failed to raise it at trial.

[11] *See Pena v. State*,  285 S.W.3d 459 (Tex. Crim. App. 2009)(by failing to raise it at trial, defendant forfeited claim that the Texas Constitution's Due Course of Law clause provided more protection than Due Process under the federal constitution with respect to the destruction of potentially exculpatory evidence).

[12] *Hailey v. State*, 87 S.W.3d 118, 121 (Tex. Crim. App. 2002).

[13] *Rhodes v. State*, 240 S.W.3d 882, 886 n.9 (Tex. Crim. App. 2007); *Volosen v. State*, 227 S.W.3d 77, 80 (Tex. Crim. App. 2007).

[14] U.S. Const., Arts. I, §1, II, §1, III, §1.

States."[15]

By contrast, the Texas Constitution contains the following express separation-of-powers provision:

> The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are Legislative to one; those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted.[16]

This has been identified as a "strict" separation-of-powers provision, and thirty-five states have such a provision.[17] All other things being equal, this textual difference between the United States and Texas constitutions suggests that Texas would more aggressively enforce separation of powers between its governmental branches than would the federal government.

That conclusion is buttressed by historical developments surrounding the framing of the United States and Texas constitutions. Madison is generally credited as the principal author of the United States Constitution, and he did indicate that the principle of separation of powers was of the utmost importance: "If there is a principle in our Constitution, indeed in any free Constitution more sacred than another, it is that which separates the legislative, executive and judicial powers."[18]

---

[15] *Id.*, Art. I, §1.

[16] T EX. CONST., Art. II, §1.

[17] Jim Rossi, *Institutional Design and the Lingering Legacy of Antifederalist Separation of Powers Ideals in the States*, 52 VAND. L. REV. 1167, 1190-91 (1999). Five states have a "general" separation-of-powers provision, and the remaining ten states have no express separation-of-powers provision. *Id.* at 1191.

[18] *Fletcher v. Office of the Attorney General ex rel. Stumbo*, 163 S.W.3d 852, 861 (Ky. 2005)(quoting Madison, Speech on the Floor of the House of Representatives, June 22, 1789, in 1 Annals of Congress 581).

Nevertheless, his arguments in defense of the Constitution in the Federalist Papers indicate that he was more concerned with checks and balances between the various branches than with maintaining strict separation. It was Madison's view that the principle behind the doctrine of separation of powers was violated only when "the *whole* power of one department is exercised by the same hands which possess the *whole* power of another department."[19] He further contended that "a mere demarcation on parchment of the constitutional limits of the several departments is not a sufficient guard against" the tyrannical concentration of power.[20] Rather, the three branches must be "so far connected and blended as to give to each a constitutional control over the others."[21]

Jefferson, too, was concerned with checks and balances, but he also wanted a strong statement concerning the separation of powers. In his Notes on the State of Virginia he said that "the powers of government should be so divided and balanced among several bodies of magistracy, as that no one could transcend their legal limits, without being effectually checked and restrained by the others."[22] Jefferson believed that the "legislative, executive and judiciary department should be separate and distinct, so that no person should exercise the powers of more than one of them at the same time" and a "barrier" should be "provided between these several powers."[23] Most importantly, Jefferson's proposed constitution for Virginia, contained in an appendix to his Notes, included an

---

[19] The Federalist Papers (Signet Classic edition 2003, ed. by Clinton Rossiter), No. 47, p. 299 (emphasis in original).

[20] *Id.*, No. 48 at p. 310.

[21] *Id.* at p. 305.

[22] Notes on the State of Virginia (Selected Writings Jefferson 1979, ed. by Harvey C. Mansfield, Jr.), Query XIII: *Constitution*, p. 30.

[23] *Id.*

express separation-of-powers clause that is almost identical to the one found in the Texas Constitution.[24] The high courts in Kentucky and Louisiana have recognized Jefferson as the author of their similarly-worded separation-of-powers provisions.[25] According to an account given by the Supreme Court of Kentucky, Jefferson told John Breckinridge and George Nicholas "that there was a danger in the federal constitution because the clause defining the powers of the departments of government was not sufficiently guarded, and that the first thing to be provided for by the Kentucky constitution should be to confine the judiciary to its powers, and the legislative and executive to theirs."[26]

In some contexts, the Supreme Court has recognized a vigorous role for the doctrine of separation of powers: "[T]he doctrine of separation of powers is a *structural safeguard* . . . a prophylactic device, establishing high walls and clear distinctions because low walls and vague distinctions will not be judicially defensible in the heat of interbranch conflict."[27] As recently as last

---

[24] Notes on the State of Virginia (Penguin Classics 1999, ed. by Frank Shuffelton), paragraph immediately preceding heading entitled "I. Legislature," p. 218, providing:

> The powers of government shall be divided into three distinct departments, each of them to be confided to a separate body of magistracy; to wit: those which are legislative to one, those which are judiciary to another, and those which are executive to another. No person, or collection of persons, being of one of these departments, shall exercise any power properly belonging to either of the others, except in the instances hereinafter expressly permitted.

[25] *Fletcher*, 163 S.W.3d at 861; *State v. All Pro Paint & Body Shop*, 639 So. 2d 707, 712 n.7 (La. 1994).

[26] *Fletcher*, 163 S.W.3d at 861. The Kentucky court acknowledged that this account was first related in an 1898 Kentucky opinion by Judge Du Relle with no citation to authority. *Id.* at 861 n.3.

[27] *Plaut v. Spendthrift Farm*, 514 U.S. 211, 239 (1995)(emphasis in original).

year, the Supreme Court invalidated a President's action as intruding upon Congress's exclusive authority to make law.[28]  The Supreme Court of Kentucky has remarked, "The United States Supreme Court has consistently allayed Jefferson's purported fears."[29]

But with respect to the legislative delegation of power to executive agencies, the same Kentucky court characterized the Supreme Court's enforcement of separation of powers as "toothless" and "feeble."[30]  Though the Supreme Court has developed a nondelegation doctrine,[31] it has found a delegation of authority to an administrative agency to violate separation of powers on only three occasions, all of which were during the New Deal era.[32]  That was when the "court-packing" controversy occurred, after which the Supreme Court declined to overturn any more administrative legislation.[33]  "[T]he notion that the Constitution narrowly confines the power of Congress to delegate authority to administrative agencies, which was briefly in vogue in the 1930s, has been virtually abandoned by the Court for all practical purposes."[34]  The Supreme Court of Florida has called the federal approach to the nondelegation doctrine a "nondoctrine," saying that

---

[28]  *Medellin v. Texas*, 128 S. Ct. 1346, 1367-72 (2008).

[29]  *Fletcher*, 163 S.W.3d at 861 (citing cases).

[30]  *Board of Trustees v. Attorney General*, 132 S.W.3d 770, 782, 784 (Ky. 2003)

[31]  *Panama Refining Co. v. Ryan*, 293 U.S. 388 (1935).

[32]  *See Texas Boll Weevil Eradication Found. v. Lewellen*, 952 S.W.2d 454, 467 (Tex. 1997); *see also Barco Beverage Corp. v. Indiana Alcoholic Beverage Comm'n*, 595 N.E.2d 250, 254 (Ind. 1992).

[33]  *B.H. v. State*, 645 So. 2d 987, 990 (Fla. 1994).

[34]  *Barco Beverage Corp.*, 595 N.E.2d at 254.

the Supreme Court has essentially abdicated any responsibility to act in the matter.[35] Due to differences in the text of state and federal constitutions and the history of federal jurisprudence, at least some state courts have expressly declared that federal authority is not persuasive in this area of the law.[36]

In a context other than legislative delegation, this Court has enforced the doctrine of separation of powers more aggressively than the United States Supreme Court has. In *Meshell v. State*, we held the Texas Speedy Trial Act unconstitutional because the time limits imposed on criminal prosecutions were an unlawful encroachment on the exclusive discretion of the prosecutor–a member of the judicial branch.[37] By contrast, the federal Speedy Trial Act remains vital.[38] There are several aspects to the doctrine of separation of powers. If Texas and federal jurisprudence differ in one aspect, the chances are good that they differ in other aspects as well. If Texas defends more vigorously the dividing line between the legislative and judicial branches,[39] then

---

[35] *B.H.*, 645 So. 2d at 992 n.3.

[36] *Id.* at 990-92; *Bloemer v. Turner*, 281 Ky. 832, 838, 137 S.W.2d 387, 390 (1939); *Board of Trustees*, 132 S.W.3d at 781-82; *Alexander v. State*, 441 So. 2d 1329, 1335 (Miss. 1983). *See also State ex rel. King v. Morton*, 955 So. 2d 1012, 1020 n.10 (Ala. 2006)(observing that some commentators have suggested that textual divergence renders federal authority "not pertinent to a discussion of the requirements of a state constitution"). *But see David v. Vesta Co.*, 45 N.J. 301, 323-24, 212 A.2d 345, 357 (1965)("But a strict interpretation of the principle, rigidly classifying all governmental action as legislative, executive, or judicial was never intended by Montesquieu . . . by the founding fathers of our federal system, or by the drafters of our State Constitutions"); *Boreali v. Axelrod*, 71 N.Y.2d 1, 10 n.1, 517 N.E.2d 1350, 1354 n.1 (Ct .App.1987)(line of cases based upon *Panama Refining* has rightfully fallen into disrepute).

[37] 739 S.W.2d 246, 253, 257 (Tex. Crim. App. 1987).

[38] *See Zedner v. United States*, 547 U.S. 489 (2006).

[39] *See also Armadillo Bail Bonds v. State*, 802 S.W.2d 237, 239-241 (Tex. Crim. App. 1990)(separation-of-powers violation for legislature to require a delay of entry of judgment in bail

it would likely also defend more vigorously the line between the legislative and executive branches. Because defense of the nondelegation line between the legislative and executive branches in the federal system is almost nonexistent, it stands to reason that defense of that line in the Texas state system would be more robust.[40]

## 2. *Are Criminal Sanctions Categorically Prohibited?*

I begin with appellee's contention that the Legislature can never delegate the power to fix elements of a criminal offense. Appellee cites two Texas cases, *Ex parte Humphrey*[41] and *Ex parte Leslie*,[42] for the proposition that "the authority to define crimes, and to fix punishments for those crimes, is vested exclusively in the Legislature." But both decisions recognized the ability of the Legislature to attach criminal penalties to the violation of a regulation under the proper conditions:

> Judicial sanction has often been given to the exercise of the power to, by law, prescribe the punishment for the violation of the regulations of a board or commission, upon the theory that, observing proper limitations, such an act is not obnoxious to the principle denying to the Legislature the power to delegate its authority.

* * *

The power to make laws is placed by the people through the Constitution upon the

---

bond forfeiture proceedings).
I recognize that the prosecutor is part of the executive branch in the federal system.

[40] Appellee also cites the Texas constitutional convention debates of 1845 to show that the Texas framers were concerned about the principle of separation of powers in discussing whether the Secretary of State should be an elected or appointed office and whether to give the Governor the right to veto legislation. Having already accepted the proposition that the Texas Constitution enforces a stricter doctrine of separation of powers than the United States Constitution, I need not consider whether these debates indirectly lend further support to that proposition.

[41] 92 Tex. Crim. 501, 244 S.W. 822 (1922).

[42] 87 Tex. Crim. 476, 223 S.W. 227 (1920).

Legislature. The rights of individuals are guarded by restrictions touching the enactment and publication of laws, and the privilege is afforded of presenting by petition or appearance before the legislative committees opposition to proposed enactments affecting the property or the liberty of the citizen. A completed law, if penal in its effect, must define the act or omission denounced as criminal to some degree of certainty.

\* \* \*

In conferring upon an instrument of government, such as the live stock sanitary commission, the power to make rules, the nonobservance of which constitutes a criminal offense, it is deemed necessary that the Legislature define the power and place limitations upon the authority to promulgate rules, to the end that they may not be lacking in the essential elements of a law denouncing an offense.[43]

Moreover, early Texas caselaw contains examples of this Court upholding laws that criminally punish the violation of an administrative regulation. In *Smith v. State*, the defendant was prosecuted for driving cattle across a quarantine line.[44] We held that the Legislature did not unconstitutionally delegate lawmaking authority to the Live Stock Sanitary Commission; rather, the Commission was acting "under specific command of the Legislature in establishing those lines whenever they deemed it was necessary to do so to protect the live stock of this state from splenetic fever, or infectious or contagious diseases."[45] In *Williams v. State*, the defendant was convicted of growing cotton in an area designated by the Pink Bollworm Commission as a regulated zone and in violation of regulations promulgated by the Commissioner on Agriculture.[46] We held that the Legislature did not improperly delegate its authority:

---

[43] *Leslie*, 87 Tex. Crim. at 478-79, 223 S.W. at 226-28; *see also Humphrey*, 92 Tex. Crim. at 505, 244 S.W. at 824 (quoting first two paragraphs from *Leslie* above).

[44] 74 Tex. Crim. 232, 168 S.W. 522 (1914).

[45] *Id.* at 234, 168 S.W. at 523.

[46] 146 Tex. Crim. 430, 176 S.W.2d 177 (1943).

The generally accepted rule governing such matters now appears to be that a legislative body may, after declaring policy and fixing a primary standard, confer upon executive or administrative officers the power to fill up the details, by prescribing rules and regulations to promote the purpose and spirit of the legislation and to carry it into effect. In such cases the action of the Legislature in giving such rules and regulations the force of laws does not violate the constitutional inhibition against delegating the legislative function.[47]

In reviewing the jurisprudence of other states, appellee comments that he "has discovered no decisional law, in either these States [with a strict separation-of-powers provision] or in those others that have less specific provisions, in which a State legislature has been constitutionally permitted to delegate to a state agency the legislative authority to define *the elements of a criminal offense*."[48] He contends, however, that decisional law from other states is instructive, and he discusses a case from Kentucky,[49] a case from Florida,[50] and a Texas case that relies upon authority from Indiana, Missouri, and Alabama.[51] His discussion of these cases reveals that they are relevant only to the extent that they advocate, in general, a restrictive approach to separation of powers—a proposition that I have already accepted.

But, in fact, many states have addressed the delegation question with respect to criminal offenses, and the weight of authority is against appellee's contention that the fixing of elements of criminal offenses can never be delegated. Cases from courts of last resort in eight states have holdings and contain language that might suggest that criminal offenses are simply off limits when

---

[47] *Id.* at 438, 176 S.W.2d at 183.

[48] Emphasis in appellee's brief.

[49] *Fletcher v. Commonwealth*.

[50] *Askew v. Cross Key Waterways*, 372 So. 2d 913 (Fla. 1979).

[51] *Snodgrass v. State*, 150 S.W. 162 (Tex. Crim. App. 1912).

it comes to delegating authority to an administrative agency.[52] But later cases in four of those states have held that such a reading is too broad and that delegation is permissible if certain conditions are met.[53] A reading of the opinions in the remaining four states suggests that there may also be bases for distinguishing or limiting their holdings.[54] And a number of other states have upheld legislative delegations that involve elements of criminal offenses.[55] Some of these delegations occurred in

---

[52] *B.H.*, 645 So. 2d at 992-93 (escape from detention facility level 6 or above); *Sundberg v. State*, 234 Ga. 482, 484, 216 S.E.2d 332, 333 (1975)(controlled substances act); *Howell v. State*, 238 Ga. 95, 95-96, 230 S.E.2d 853, 853-54 (1976)(Dept. of Nat. Res firearm regulation); *Bloemer v. Turner*, 281 Ky. 832, 840, 137 S.W.2d 387, 392 (1939)(dog food regulation); *State v. Broom*, 439 So. 2d 357, 369 (La. 1983)(op. on rehearing)(explosives regulation); *State v. Raccagno*, 530 S.W.2d 699, 702-03 (Mo. 1975)(tax stamp regulation); *State v. Gallion*, 572 P.2d 683, 688-90 (Utah 1977)(controlled substances act); *State v. Grinstead*, 157 W. Va. 1001, 1012-13, 206 S.E.2d 912, 920 (1974)(same); *State v. Grimshaw*, 49 Wyo. 192, 210, 53 P.2d 13, 19 (1935)(transporting goods without a permit).

[53] *Avatar Dev. Corp. v. State*, 723 So. 2d 199, 203-04 (Fla. 1998)(failure to comply with environmental permit condition)(distinguishing *B.H.*); *All Pro Paint & Body Shop*, 639 So.2d at 713-14 (hazardous waste)(distinguishing *Broom*); *State v. Thompson*, 627 S.W.2d 298, 302-03 (Mo. 1982)(controlled substances act)(distinguishing *Raccagno*); *Found. for Indep. Living v. Cabell-Huntington Board of Health*, 214 W. Va. 818, 829-31, 591 S.E.2d 744, 755-57 (2003)(clean indoor air regulations)(distinguishing *Grinstead*).

[54] *Howell*, 238 Ga. at 95, 230 S.E.2d at 853 (regulations could be made basis of criminal prosecution if the enabling statute "limited the power to promulgate rules . . . in harmony with what the Assembly has already declared to be a crime"); *Bloemer*, 281 Ky. at 840, 137 S.W.2d at 391-92 (discussing adequacy of statutory standards); *Gallion*, 572 P.2d at 687 (delegation was to attorney general, a specific person within the executive department, separation-of-powers provision was directed at a "person" and did not apply to administrative agencies); *Grimshaw*, 49 Wyo. at 210-11, 53 P.2d at 19 (no fixed standard where order or decision of agency could be overturned on review); *but see Wyoming Coalition v. Wyoming Game & Fish Comm'n*, 875 P.2d 729, 732 (Wyo. 1994)(construing *Grimshaw* in *dicta* to mean that "an agency may not define a standard of conduct pursuant to which an individual might be adjudged a criminal").

[55] *Ex parte McCurley*, 390 So. 2d 25, 26-29 (1980)(controlled substances act); *State v. Williams*, 119 Ariz. 595, 598-99, 583 P.2d 251, 254-55 (1978)(food stamps); *Curry v. State*, 279 Ark. 153, 158-60, 649 S.W.2d 833, 836-37 (1983)(controlled substances act); *People v. Lowrie*, 761 P.2d 778, 780-84 (Colo. 1988)(sex acts in liquor establishment); *State v. Kellogg*, 98 Idaho 541, 542-45, 568 P.2d 514, 515-18 (1977)(controlled substances act); *State v. Turmon*, 417 Mich. 638, 643-53,

connection with a state's controlled substances act, which carried felony penalties,[56] and courts have observed that permitting delegation in that context is the "majority view" of those jurisdictions addressing the issue.[57]

Appellee's argument also runs up against a practical consideration. The regulation at issue has both civil and criminal penalties. The penalties themselves are statutory.[58] Is an administrative rule any less "legislative" if it carries only a civil penalty rather than a criminal one? The criminal nature of the penalty makes a difference for many constitutional provisions that directly protect the citizen from the government: due process and the right to a jury trial, for example. But separation of powers is concerned with the government's relationship with itself rather than with citizens who may be potential rule-breakers.

### 3. *What is the scope of the Texas Constitutional provision?*

---

340 N.W.2d 620, 623-27 (1983)(same, but also discussing prior case involving criminal penalties attached to violation of open season declarations regarding birds, fish, and fur-bearing animals); *State v. Cutright*, 193 Neb. 303, 304-07, 226 N.W.2d 771, 773-74 (1975)(swimming in a restricted area)(but distinguishing between a legislative definition of the crime that incorporates a regulation and a statute that simply criminalizes the violation of a regulation); *State v. Switzer*, 22 Ohio St. 2d 47, 51-53, 257 N.E.2d 908, 911-12 (1970)(possession of undersized fish); *State v. Peloquin*, 427 A.2d 1327, 1329-31 (R.I. 1981)(controlled substances act); *State v. Moschell*, 2004 SD 35, P13-25, 677 N.W.2d 551, 558-60 (2004)(hunting, taking, and transportation of wild animals)(criticizing *Broom*).

[56] *See McCurley v. State*, 390 So. 2d 15, 16 (Ala. Crim. App. 1980)(punishment imposed was four years in penitentiary probated to twelve months in jail); *Kellogg*, 98 Idaho at 542, 568 P.2d at 515 (offense punishable by up to three years of imprisonment); *Turmon*, 471 Mich. at 653, 340 N.W.2d at 627 (controlled substances act creates felonies, no meaningful difference from delegation perspective between felonies and misdemeanors).

[57] *Curry*, 279 Ark. at 159, 649 S.W.2d at 837; *Turmon*, 417 Mich. at 648 n.4, 340 N.W.2d at 625 n.4.

[58] *See* this opinion footnote 2 (criminal penalties); TEX. WATER CODE §7.102 (civil penalty).

In *Field v. Clark*, a late nineteenth-century case, the United States Supreme Court quoted a

Pennsylvania decision for the distinction between a law that properly confers administrative authority

and one that improperly delegates legislative authority:

> The legislature cannot delegate its power to make a law; but it can make a law to delegate a power to determine some fact or state of things upon which the law makes or intends to make, its own action depend.  To deny this would be to stop the wheels of government.  There are many things upon which wise and useful legislation must depend which cannot be known to the law-making power, and, must, therefore, be a subject of inquiry and determination outside of the halls of legislation.[59]

This Court and the vast majority of other state courts of last resort have quoted from this passage

with approval (including the high courts in Florida and Kentucky, upon which appellee relies

most).[60]

---

[59]  143 U.S. 649, 694 (1892)(quoting *Locke's Appeal*, 72 Pa. 491, 498 (1873)).

[60]  *Williams,* 146 Tex. Crim. at 438, 176 S.W.2d at 183; *Monroe v. Harco, Inc.*, 762 So. 2d 828, 831 (Ala. 2000); *State v. Arizona Mines Supply Co.*, 107 Ariz. 199, 205, 484 P.2d 619, 625 (1971); *Swanberg v. Tart*, 300 Ark. 304, 311, 778 S.W.2d 931, 934 (1989); *Kugler v. Yocum*, 69 Cal. 2d 371, 376, 445 P.2d 303, 306 (1968); *People v. Gallegos*, 644 P.2d 920, 929 (Colo. 1982); *Kellems v. Brown*, 163 Conn. 478, 500, 313 A.2d 53, 64-65 (1972); *Avatar Dev. Corp.*, 723 So. 2d at 204; *Telford v. Gainesville*, 208 Ga. 56, 63, 65 S.E.2d 246, 251 (1951); *Kellogg*, 98 Idaho at 543, 568 P.2d at 516; *People ex rel. Adamowski v. Chicago Land Clearance Com.*, 14 Ill. 2d 74, 80, 150 N.E.2d 792, 796 (1958); *Stanton v. Smith*, 429 N.E.2d 224, 228 (Ind. 1981); *AFSCME/Iowa Council 61 v. State*, 484 N.W.2d 390, 394 (Iowa 1992); *State ex rel. Hawks v. Topeka*, 176 Kan. 240, 246 270 P.2d 270, 276 (1954); *Fletcher*, 163 S.W.3d at 862; *All Pro Paint & Body Shop*, 639 So. 2d at 711; *Kovack v. Licensing Board, Waterville*, 157 Me. 411, 418, 173 A.2d 554, 558 (1961); *Nottingham Village, Inc. v. Baltimore County*, 266 Md. 339, 351, 292 A.2d 680, 686 (1972); *Taylor v. Smithkline Beecham Corp.*, 468 Mich. 1, 9 n.7, 658 N.W.2d 127, 132 n.7 (2003); *Hassler v. Engberg*, 233 Minn. 487, 515, 48 N.W.2d 343, 360 (1951); *Clark v. State*, 381 So. 2d 1046, 1050 (Miss. 1980); *Thompson*, 627 S.W.2d at 303; *State v. Stark*, 100 Mont. 365, 371, 52 P.2d 890, 893 (1935); *Searle v. Yensen*, 118 Neb. 835, 842-43, 226 N.W. 464, 467 (1929); *Villanueva v. State*, 117 Nev. 664, 668, 27 P.3d 443, 446 (2001); *Little Ferry v. Bergen County Sewer Authority*, 9 N.J. 536, 543, 89 A.2d 18, 23 (1952); *State ex rel. State Park & Recreation Comm'n v. New Mexico State Auth.*, 76 N.M. 1, 10, 411 P.2d 984, 991 (1966); *Peacock v. County of Scotland*, 262 N.C. 199, 203-04, 136 S.E.2d 612, 615 (1964); *North Dakota Council of Sch. Adm'rs v. Sinner*, 458 N.W.2d 280, 286 (1990); *Switzer*, 22 Ohio St. 2d at 52-53, 257 N.E.2d at 912; *Burger v. Gorden*, 380 P.2d 687, 690 (Okla. 1963); *Savage v. Martin*, 161 Ore. 660, 697, 91 P.2d 273, 288 (1939); *Terry v. Pratt*, 258

Beyond agreement on this passage, there are various approaches and nuances in the states with respect to the issue of nondelegation. One scholar has grouped the states into three broad nondelegation categories: weak, moderate, and strong.[61] Notably, in the "strong" nondelegation category, he has included Texas, Florida, Arizona, Illinois, Kentucky, Massachusetts, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, Ohio, Oklahoma, Pennsylvania, South Dakota, South Carolina, Virginia, and West Virginia.[62] Louisiana, the state other than Kentucky to recognize the Jeffersonian origin of its "strict" separation-of-powers provision, is categorized as a "moderate" nondelegation state.[63] New York, Ohio, and Pennsylvania have no express separation-of-powers clause, New Hampshire and South Dakota have a "general" provision, and the remaining states in the "strong" category, like Texas, have a "strict" provision expressly requiring separation of the branches of government.[64] Whether the characterization of how strongly various states enforce the nondelegation doctrine was correct when made or remains correct today is a difficult matter to ascertain without close familiarity with the jurisprudence of every state in the country. But an examination of the cases can reveal some common threads that are relevant to our inquiry.

---

S.C. 177, 184, 187 S.E.2d 884, 887 (1972); *John Morrell & Co. v. American Ry. Express Co.*, 45 S.D. 399, 404, 187 N.W. 724, 725 (1922); *Gamble v. State*, 206 Tenn. 376, 387, 333 S.W.2d 816, 821 (1960); *State Highway Bd. v. Gates*, 110 Vt. 67, 77, 1 A.2d 825, 829 (1938); *Stuart's Ex'rs v. Board of Sinking Fund Comm'rs*, 123 Va. 224, 229, 96 S.E. 239, 241 (1918); *Diversified Inv. Partnership v. Dep't of Soc. & Health Servs.*, 113 Wn.2d 19, 25, 775 P.2d 947, 950 (1989); *Cowan v. County Comm'n*, 161 W. Va. 106, 110-11, 240 S.E.2d 675, 678 (1977); *State v. Wakeen*, 263 Wis. 401, 409, 57 N.W.2d 364, 368 (1953); *Grimshaw*, 49 Wyo. at 205, 53 P.2d at 17.

[61] Rossi at 1191-1201.

[62] *Id.* at 1196-97.

[63] *Id.* at 1198-1200.

[64] *Id.* at 1196-97.

This Court and courts in other states have widely upheld the delegation of authority to an administrative agency so long as the Legislature enacts proper standards to guide administrative discretion.[65] When the subject matter to be regulated is complex, courts have allowed the standards to be more general in order to afford sufficient flexibility to the agency and to take advantage of expertise.[66] Environmental regulation in particular has been characterized as a complex field in which a large amount of administrative discretion is necessary. The Supreme Court of Florida explained:

> Clearly, environmental protection requires highly technical, scientific, regulatory schemes to ensure proper compliance with legislative policy. It would be difficult, if not impossible, to require the Legislature to enact such rules, regulations and procedures capable of addressing the myriad of problems and situations that may arise implicating pollution control and prevention.[67]

Nevertheless, courts have also recognized that standards should not be so vague as to confer

---

[65] *See Williams*, 146 Tex. Crim. at 438, 176 S.W.2d at 183; *Walden v. Hart*, 243 Ark. 650, 652, 420 S.W.2d 868, 870 (1967); *Barco Beverage Corp.*, 595 N.E.2d at 253-54; *State ex rel. Tomasic v. Wyandotte County*, 264 Kan. 293, 303-04, 955 P.2d 1136, 1148 (1998); *Board of Trustees*, 132 S.W.3d at 782; *Lewis v. State Dept. of Human Serv.*, 433 A.2d 743, 747-48 (Me. 1981); *Turmon*, 417 Mich. at 644-45, 340 N.W.2d at 623-24; *State v. Mathis*, 315 Mont. 378, 382, 68 P.3d 756, 760 (2003); *Cobb v. State Canvassing Board*, 140 N.M. 77, 89, 140 P.3d 498, 510 (2006); *Moschell*, 2004 SD at P15-16, 677 N.W.2d at 558-59; *Found. for Indep. Living*, 214 W. Va at 830, 591 S.E.2d at 756.

[66] *Arizona Mines Supply Co.*, 107 Ariz. at 205, 484 P.2d at 625 (pollution standards); *Curry*, 279 Ark. at 159-60, 649 S.W.2d at 837 (controlled substances act); *People v. Holmes*, 959 P.2d 406, 412 (Colo. 1998)(contraband at a detention facility); *Avatar Dev. Corp.*, 723 So. 2d at 207 (pollution control and prevention); *Kellogg*, 98 Idaho at 543-44, 568 P.2d at 516-17 (controlled substances act); *Tomasic*, 264 Kan. at 305, 955 P.2d at 1148-49 (consolidation of city and county operations); *Ashland Transfer Co. v. State Tax Comm'n.*, 247 Ky. 144, 160-61, 56 S.W.2d 691, 698 (1932)(commercial traffic on public highways); *All Pro Paint & Body Shop*, 639 So. 2d at 716-17 (hazardous waste); *Lewis*, 433 A.2d at 748-49 (subsurface sewage disposal systems); *Peloquin*, 427 A.2d at 1330-31 (controlled substances act).

[67] *Avatar Dev. Corp.*, 723 So. 2d at 207.

discretion that is absolute,[68] unbridled,[69] open-ended,[70] arbitrary,[71] or uncontrolled.[72]

In addition, a number of courts have held that procedural safeguards must accompany broad standards to ensure that the agency action conforms to those standards.[73] The required procedural safeguards typically include a pre-adoption public hearing and post-adoption judicial review.[74] Procedural safeguards ensure that the administrative agency really is doing the will of the Legislature: The pre-adoption public hearing ensures that the administrative agency takes the legislative standards into account, engaging in factual determinations that relate to the legislative standards rather than simply dictating policy, and judicial review ensures that the administrative

---

[68] *Walden*, 243 Ark. at 654, 420 S.E.2d at 870; *Moschell*, 2004 SD at P.17, 677 N.W.2d at 559.

[69] *Lowrie*, 761 P.2d at 782; *Cobb*, 140 N.M. at 89, 140 P.3d at 510.

[70] *Lowrie*, 761 P.2d at 782; *B.H.*, 645 So. 2d at 994.

[71] *B.H.*, 645 So. 2d at 994; *Mathis*, 315 Mont. at 383, 68 P.3d at 760; *Cobb*, 140 N.M. at 89, 140 P.3d at 510.

[72] *Mathis*, 315 Mont. at 383, 68 P.3d at 760; *see also Walden*, 243 Ark. at 654, 420 S.E.2d at 870 ("unregulated" or "undefined"); *Moschell*, 2004 SD at P.17, 677 N.W.2d at 559 (same).

[73] *Cottrell v. City and County of Denver*, 636 P.2d 703, 709 (Colo. 1981); *All Pro Paint & Body Shop*, 639 So. 2d at 713; *Turmon*, 417 Mich. at 648, 650, 340 N.W.2d at 625, 626; *Opinion of Justices*, 368 Mass. 831, 837, 333 N.E.2d 388, 393 (1975); *Boreali,* 71 N.Y.2d at 10, 517 N.E.2d at 1354; *Peloquin*, 427 A.2d at 1331; *Wyoming Coalition v. Wyoming Game & Fish Comm'n.*, 875 P.2d 729, 733-34 (Wyo. 1994). Colorado allows for the possibility that a delegation may be proper even if standards and safeguards can be found only at the administrative level, *Cottrell*, 636 P.2d at 709-10, but such a thing has not been suggested in any other jurisdiction (as far as I am aware), and New Mexico has specifically stated that an agency's "self-imposed restraints can in no way serve to supply what has been omitted." *Cobb*, 140 N.M. at 89, 140 P.3d at 510.

[74] *See* above footnote.

agency's rules and other actions actually conform to the legislative standards.[75] Of course, for safeguards to have meaning, the legislative standards must be sufficiently specific to allow the agency and the courts to determine whether the agency is carrying out the intent of the legislature.[76]

Though the line of demarcation between a proper and an improper delegation may not be easy to discern,[77] the branches should be kept as separate as possible while taking into account the practical necessities of life.[78] The fact that the Legislature could have been more specific does not necessarily invalidate a delegation,[79] however, and legislative standards can be implied from an express statutory purpose,[80] consistent with the principle that we will employ a narrowing construction to save the constitutionality of a statute if it is amenable to such a construction.[81] The

---

[75] *See Cottrell*, 636 P.2d at 709 (safeguards ensure "that administrative action will be rational and consistent in the first instance and that subsequent judicial review of that action is available and will be effective"); *All Pro Paint & Body Shop*, 639 So. 2d at 713 (procedural safeguards requirement "ensures the agency exercises that discretion in accordance with the policy and standards prescribed in the enabling statute").

[76] *See Avatar Dev. Corp.*, 723 So. 2d at 202 (quoting *Askew*, 372 So. 2d at 918-19) (delegation invalid when "neither the agency nor the courts can determine whether the agency is carrying out the intent of the legislature"); *All Pro Paint & Body Shop*, 639 So. 2d at 712 (adequacy of standards "prevents judicial review from becoming merely an exercise at large by providing the courts with some measure against which to judge the official action that has been challenged").

[77] *Bloemer*, 281 Ky. at 840, 137 S.W.2d at 391; *Mathis*, 315 Mont. at 385, 68 P.3d at 761; *Boreali*, 71 N.Y.2d at 11, 517 N.E.2d at 1355.

[78] *Mississippi Pub. Serv. Comm'n v. Mississippi Power & Light Co.*, 593 So. 2d 997, 999 (Miss. 1991); *see also David*, 45 N.J. at 324, 212 A.2d at 357 (warning against use of separation-of-powers doctrine with "pedantic rigor" that would make "the modern administrative agency . . . an impossibility in our law").

[79] *Kellogg*, 98 Idaho at 544, 568 P.2d at 517.

[80] *Tomasic*, 264 Kan. at 305, 955 P.2d at 1148; *All Pro Paint & Body Shop*, 639 So. 2d at 716; *Opinion of Justices*, 368 Mass. at 834-35, 333 N.E.2d at 392.

[81] *Long v. State*, 931 S.W.2d 285, 295 (Tex. Crim. App. 1996).

Supreme Court of Kentucky has explained that one important purpose of the nondelegation branch of the separation-of-powers doctrine is to ensure that the Legislature takes the political heat for its enactments rather than shifting blame to an unelected bureaucrat.[82]

Application of these principles may be found in a number of cases, and I discuss a few of the significant decisions here. I begin with cases that have found a delegation to be unconstitutional. In *Askew v. Cross Key Waterways*, the Supreme Court of Florida addressed the constitutionality of the Florida Environmental Land and Water Management Act.[83] That statute empowered "the Division of State Planning to recommend areas of critical state concern to the Governor and cabinet acting as the Administration Commission" and empower this Administration Commission to act on those recommendations.[84] An area could be designated as "of critical state concern" if it had significant impact upon "environmental, historical, natural, or archaeological resources of regional or statewide importance," was significantly affected by or had a significant effect upon "an existing or proposed major public facility or other area of major public investment," or was a "proposed area of major development potential," including "a proposed site of a new community."[85] This scheme violated separation of powers because it conferred upon the Administrative Commission "the fundamental legislative task of determining which geographic areas and resources are in the greatest need of protection."[86] The statute treated "alike, as fungible goods, disparate categories of

---

[82] *Board of Trustees*, 132 S.W.3d at 784.

[83] 372 So. 2d at 914.

[84] *Id.* at 914-15.

[85] *Id.*

[86] *Id.* at 919.

environmental, historical, natural, and archaeological resources of regional or statewide importance and all of Florida's manifold resources within those vast categories," so that a reviewing court could not possibly "ascertain whether the priorities recognized by the Administration Commission comport with the intent of the legislature."[87]

In *Boreali v. Axelrod*, the New York Court of Appeals addressed the constitutionality of regulations on the indoor smoking of tobacco.[88] The Public Health Council promulgated "regulations prohibiting smoking in a wide variety of indoor areas that are open to the public, including schools, hospitals, auditoriums, food markets, stores, banks, taxicabs and limousines."[89] The rules required restaurants with seating capacities of greater than fifty people to provide nonsmoking areas, and employers were required to provide smoke-free work areas for nonsmoking employees.[90] Some areas were exempt from the regulations, including restaurants with seating capacities of less than fifty, conventions, trade shows, and bars.[91] A waiver of the regulations could be obtained from the Commissioner "upon a showing of financial hardship."[92] The claimed authority for these regulations was a statute that authorized the Public Health Council to "deal with any matter affecting the . . . public health."[93] The New York court declined to say that the broad enabling statute

---

[87] *Id.*

[88] 71 N.Y.2d at 7, 517 N.E.2d at 1352.

[89] *Id.*

[90] *Id.*

[91] *Id.*

[92] *Id.*

[93] *Id.* at 9, 517 N.E.2d at 1353 (ellipsis in original).

was itself an unconstitutional delegation of legislative authority, but the court concluded that the agency "stretched that statute beyond its constitutionally valid reach when it used the statute as a basis for drafting a code embodying its own assessment of what public policy ought to be."[94]

The court gave four reasons for its conclusion: First, the court observed that, while "acting to further the laudable goal of protecting nonsmokers from the harmful effects of 'passive smoking,' the agency in reality "constructed a regulatory scheme laden with exceptions based solely upon economic and social concerns."[95] Second, the agency wrote on a "clean slate," creating "a comprehensive set of rules without the benefit of legislative guidance."[96] Third, the agency "acted in an area in which the Legislature had repeatedly tried – and failed – to reach agreement in the face of substantial public debate and vigorous lobbying by a variety of interested factions."[97] Finally, no special expertise or technical competence in the field of health was involved in the development of the anti-smoking regulations.[98]

In *Ex parte Leslie*, we addressed the constitutionality of a statute authorizing administrative action with respect to livestock.[99] The defendant was prosecuted for failing to dip cattle that were in a quarantine zone.[100] The relevant statute made it a criminal offense to fail to dip livestock "at

---

[94] *Id.*

[95] *Id.* at 11-12, 517 N.E.2d at 1355.

[96] *Id.* at 13, 517 N.E.2d at 1356.

[97] *Id.*.

[98] *Id.* at 14, 517 N.E.2d at 1356.

[99] 87 Tex. Crim. at 477-78, 223 S.W. at 227.

[100] *Id.*

such time and in such manner as directed in writing by the live stock sanitary commission."[101] On March 27[th], the commission ordered the defendant to dip his cattle on March 29[th] between 7:00 a.m. and 1:00 p.m.[102] Though the Legislature's clear purpose was to protect livestock from diseases,[103] the statute in question imposed an affirmative duty on livestock owners to comply with an inspector's order without providing any guidance concerning the "dates or intervals when cattle shall be dipped" or the amount of notice that an owner should have to bring his cattle into compliance.[104]

Another example of a case in which the legislative policy was perhaps clear but the statutory standards were not is the Florida decision in *B.H. v. State*. In that case, a statute created the crime of "escape from any secure detention facility or any residential commitment facility of restrictiveness level VI or above."[105] The Department of Health and Rehabilitative Services was given the authority to define restrictiveness levels "in terms of broad categories based on 'the risk and needs of the individual child,' of which there can be no more than eight," with no other meaningful limitations.[106] The Department created four risk levels, numbered 2, 4, 6, and 8.[107] The Florida Supreme Court observed that the Department could have just as easily created risk levels numbered 1 through 4—in which case no facility would fall within the definition of the offense—or risk levels numbered 10,

---

[101] *Id.* at 479, 223 S.W. at 228.

[102] *Id.*

[103] *See Smith*, 74 Tex. Crim. at 234, 168 S.W. at 523.

[104] *Leslie*, 87 Tex. Crim. at 479-82, 223 S.W. at 228-29.

[105] 645 So. 2d at 994.

[106] *Id.*

[107] *Id.*

20, 30, and 40—in which case all facilities would fall within the definition of the offense.[108] Thus, the enabling statute failed to articulate reasonably definite standards, instead conferring unlimited and arbitrary discretion.[109]

I turn now to some cases that have upheld a delegation as constitutional. I refer again to our decisions in *Smith* and *Williams*, respectively involving transportation of cattle across a quarantine line and the growing of cotton in a quarantine zone. The legislative policy of preventing the spread of disease to livestock or cotton was clear, the need for expertise and the ability to address conditions on the ground was evident, and the authority to designate zones based on the threat of disease infestation was reasonably specific.[110]

A number of jurisdictions have upheld the delegation of authority to an administrator to designate a particular drug as a controlled substance, and prosecute possession of that substance as a crime.[111] In most of these cases the statute contained a list of the following eight standards:

(1) The actual or relative potential for abuse;

(2) The scientific evidence of its pharmacological effect, if known;

(3) The state of current scientific knowledge regarding the substance;

(4) The history and current pattern of abuse;

---

[108] *Id.*

[109] *Id.*

[110] *See Smith*, 74 Tex. Crim. at 233-34, 168 S.W. at 522-23; *Williams*, 146 Tex. Crim. at 433-39, 176 S.W.2d at 179-83.

[111] *See McCurley*, 390 So. 2d at 26-29; *Curry*, 279 Ark. at 155-60, 649 S.W.2d at 835-37; *Kellogg*, 98 Idaho at 542-44, 568 P.2d at 515-17; *Turmon*, 417 Mich. at 643-53, 340 N.W.2d at 623-27; *Thompson*, 627 S.W.2d at 300-03; *Peloquin*, 427 A.2d at 1328-31.

(5) The scope, duration and significance of abuse;

(6) The risk to the public health;

(7) The potential of the substance to produce psychic or physiological dependence liability; and

(8) Whether the substance is an immediate precursor of a substance already controlled under this chapter.[112]

The Michigan court referred to mandatory rulemaking procedures as further insuring against possible abuse of delegated power[113] while the Rhode Island court pointed to the availability of judicial review.[114]

The Supreme Court of Florida addressed the constitutionality of a pollution control statute that made it a criminal offense for a person "[t]o fail to obtain any permit required by this chapter or by rule or regulation, or to violate or fail to comply with any rule, regulation, order, permit, or certification adopted or issued by the [Department of Environmental Protection] pursuant to its lawful authority."[115] In a purpose section, the legislation articulated that "pollution of the air and waters of this state constitutes a menace to public health and welfare," noted various harmful effects, and declared a public policy to protect and improve the quality of air and water and to protect against

---

[112] *See McCurley*, 390 So. 2d at 26; *Curry*, 279 Ark. at 158-59, 649 S.W.2d at 836; *Turmon*, 417 Mich. at 646, 340 N.W.2d at 624; *Thompson*, 627 S.W.2d at 301 n.5; *Peloquin*, 427 A.2d at 1331 n.7.

[113] *Turmon*, 417 Mich. at 648, 340 N.W.2d at 625.

[114] *Peloquin*, 427 A.2d at 1331.

[115] *Avatar Dev. Corp.*, 723 So. 2d at 201 (full name of agency provided in brackets in place of "department").

the harmful effects of pollution.[116]  The statute also contained criteria requiring the department to consider a number of factors, including the effects of an activity on people, wildlife, navigation, erosion, fishing, recreation, and historical and archaeological resources, whether the activity was temporary or permanent, and the relative value of the functions being performed by areas affected by the activity.[117]  Though the prosecution at issue involved the violation of a permit condition, the court more broadly indicated that the Legislature lacked ability and expertise to enact "rules, regulations, and procedures" capable of addressing the "the myriad problems and situations" implicating pollution control, and that the provision of "criminal sanctions for the willful violation of administrative rules and regulations is of little consequence where it is the Legislature, and not the administrative body, that has declared such acts unlawful based upon express legislative policy."[118]

The final case I address is in contrast to the New York decision regarding the regulation of smoking.  In West Virginia, the Legislature articulated in a purpose provision that it wished to have "a citizenry free from the use of tobacco."[119]  In light of this articulated purpose, a sufficient basis for adopting anti-smoking regulations carrying criminal penalties existed under a statute permitting an agency to "adopt and promulgate and from time to time amend rules consistent with state public health laws and the rules of the West Virginia state department of health and human resources, that are necessary and proper for the protection of the general health of the service area and the

---

[116]  *Id.* at 206.

[117]  *Id.* at 206 n.8

[118]  *Id.* at 207.

[119]  *Found. for Indep. Living*, 214 W. Va. at 825-26, 830, 591 S.E.2d at 751-52, 756.

prevention of the introduction, propagation and spread of disease."[120]

From this discussion, I conclude that a delegation of authority to an administrative agency is constitutionally permissible under the separation-of-powers provision of the Texas Constitution if the following four conditions are met: (1) the delegation can, at least by implication, be characterized as the delegation of authority to make a factual determination relevant to the purpose of the statute, rather than simply a policy decision, (2) the statute contains standards, expressly provided or implied from an express statutory purpose, that are sufficiently specific to give guidance to the agency and to the courts as to what types of rules or other actions are and are not permissible, (3) pre-adoption procedural safeguards exist to ensure that the agency has the opportunity to consider whether the rule or other action conforms to the legislative standards, and (4) post-adoption judicial review is available to ensure that the agency rule or other action does in fact comply with the legislative standards. An agency's action under this four-pronged approach is essentially an implied fact determination. As is usual with fact determinations, deference should be accorded on judicial review to the agency's action.[121] I now turn to the application of those conditions to the case at bar.

### 4. *Does the outdoor burning delegation comply with the Texas Separation-of-powers provision?*

The Legislature has provided that a criminal offense occurs if a person "intentionally or knowingly with respect to the person's conduct, violates . . . a rule adopted under Chapter 382, Health and Safety Code."[122] Appellee was prosecuted for a rule adopted under §382.018, authorizing

---

[120] *Id.*

[121] *See Guzman v. State*, Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997); *Manzi v. State*, 88 S.W.3d 240, 242-44 (Tex. Crim. App. 2002).

[122] TEX. WATER CODE, §7.177(a)(5).

administrative rules that "control or prohibit the outdoor burning of waste and combustible material."[123]  The statute requires TCEQ to permit outdoor burning of waste that "consists of trees, brush, grass, leaves, branch trimmings, or other plant growth" when it is burned under certain conditions.[124]  Section 382.018 does not specifically mention other types of material, but some provisions within Chapter 382 are instructive.

First, the Legislature expressly articulated the purpose of Chapter 382:

> The policy of this state and the purpose of this chapter are to safeguard the state's air resources from pollution by controlling or abating air pollution and emissions of air contaminants, consistent with the protection of public health, general welfare, and physical property, including the esthetic enjoyment of air resources by the public and the maintenance of adequate visibility.[125]

In its rulemaking section, Chapter 382 refers to adopting a rule "consistent with the policy and purposes of this chapter."[126]  Second, the Legislature provided that TCEQ shall have the power and duty to "control the quality of the state's air."[127]  Third, the Legislature provided the following explicit standards for determining whether to adopt a rule under Chapter 382:

> The terms and provisions of a rule adopted by the commission may differentiate among particular conditions, particular sources, and particular areas of the state.  In adopting a rule, the commission shall recognize that the quantity or characteristic of air contaminants or the duration of their presence in the atmosphere may cause a need for air control in one area of the state but not in other areas.  In this connection, the commission shall consider:

---

[123]  TEX. HEALTH & SAFETY CODE, §382.018(a).

[124]  *Id.*, §382.018(b)-(d).

[125]  *Id.*, §382.002(a).

[126]  *Id.*, §382.017(a).

[127]  *Id.*, §382.011(a)(3).

(1) the factors found by it to be proper and just, including existing physical conditions, topography, population, and prevailing wind direction and velocity; and

(2) the fact that a rule and the degrees of conformance with the rule that may be proper for an essentially residential area of the state may not be proper for a highly developed industrial area or a relatively unpopulated area.[128]

The delegation of authority here can, at least by implication, be characterized as the delegation of authority to make a factual determination relevant to the purpose of the statute, rather than simply a policy decision. The Legislature has tasked TCEQ with determining how to safeguard the quality of our air. What practices threaten air quality is a factual determination. In determining that a practice should be prohibited, TCEQ impliedly determines that the practice threatens the quality of our air. In determining that a practice should be regulated, TCEQ impliedly determines that the regulation of that practice is needed to safeguard air quality.

The statutory scheme also provides standards. TCEQ must take into account the quantity, characteristic, and duration of air contaminants in determining whether there is a need for air control in one area of the state but not other areas. If appropriate, the agency must consider physical conditions, topography, population, and prevailing wind direction and velocity, and the agency must consider the difference between residential areas, highly developed industrial areas, and relatively unpopulated areas. In addition, the purpose statement tasks TCEQ with protecting public health, general welfare, physical property, the esthetic enjoyment of air resources by the public, and the maintenance of adequate visibility.

Therefore, a rule under the statutory scheme must promote air quality and be tailored to the facts of a particular geography, or if it is a statewide rule, then the activity that is prohibited or

---

[128] *Id.*, §382.017(e).

regulated must be the kind that damages the quality of the air everywhere in the State of Texas, from the largest city to the remotest rural location.

The statutory scheme also contains pre-adoption safeguards that give the agency the opportunity to consider information provided through public comment, either through Chapter 382 or through the Administrative Procedure Act (APA).[129] If the Chapter 382 procedure is followed, a public hearing must be held before a rule is adopted; notice of the date, time, place, and purpose of the hearing for a statewide rule must be published twenty days before the hearing in at least three newspapers whose combined circulation, in TCEQ's judgment, will give reasonable circulation throughout the State; and any person may appear at the hearing and be heard.[130] If the APA procedure is followed, the agency must give thirty days notice of the hearing by publication in the Texas Register,[131] the notice must satisfy certain requirements which include matters relating to the content of the proposed rule,[132] and the agency must afford interested persons the opportunity to comment on the proposed rule.[133]

Judicial review is also available. It is possible that a TCEQ rule relating to outdoor burning could be challenged in a declaratory judgment action under the APA.[134] But regardless of whether that is the case, when a violation of the rule has resulted in a criminal conviction, the propriety of

---

[129] *See id.*, §382.017(d).

[130] *Id.*, §382.017(a)-(c).

[131] T EX. GOVT. CODE §2001.023.

[132] *Id.*, §2001.024.

[133] *Id.*, §2001.029.

[134] *Id.*, §2001.038.

the rule can be reviewed on appeal. Though deferential, such review can nevertheless be meaningful. For example, appellee argues that TCEQ could enact a rule banning cigarette smoking. But a statewide anti-smoking rule would clearly violate the legislative standards because such conduct does not, even under the most deferential review, pose a threat to the quality of the air in all portions of the state.[135] I conclude that the Legislature did not unconstitutionally delegate its power in enacting the outdoor burning statute.

The remaining question is whether TCEQ acted within the Legislature's grant of authority in passing a rule that prohibited burning of the items in question. The rule in question[136] seems to be a reasonable one designed to protect the quality of the air in any portion of the state. Consequently, I would deny appellee's challenge and affirm the judgment of the court of appeals.

I concur in the court's judgment.

Filed: September 23, 2009
Publish

---

[135] TCEQ has specifically authorized burning used "solely for recreational or ceremonial, purposes or in the noncommercial preparation of food, or used exclusively for the purpose of supplying warmth during cold weather." TEX. ADMIN. CODE §111.207.

[136] *See id.*, §111.219(7).