Wayne A. STANTON, Administrator of the Indiana State Department of Public Welfare, Robert Watson, Chairperson and James Burnett, Robert Curless, Marion Hilger and Arvella Stanton, members of the State Board of Public Welfare and Elizabeth Samkowski, Director of the Marion County Department of Public Welfare, Appellants,

v.

Clara SMITH, individually and on behalf of her minor children and on behalf of all other persons similarly situated, Appellees.

No. 975S238.

Supreme Court of Indiana.

Dec. 22, 1981.

Theodore L. Sendak, Atty. Gen., Robert F. Colker, Asst. Atty. Gen., Joseph J. Reiswerg, Deputy Atty. Gen., Indianapolis, for appellants.

Harold R. Berk, Legal Services Organization of Indianapolis, Inc., Louis Rosenberg, Indiana Center on Law and Poverty, Indianapolis, for appellees.

PIVARNIK, Justice.

This action was brought in the trial court by Clara Smith against Wayne A. Stanton, as Administrator of the Indiana State Department of Public Welfare, and members of the State Board.  Clara Smith was a

recipient of aid to families with dependent children (AFDC) for herself and four minor children as administered by the State Department of Public Welfare and the Marion County Department of Public Welfare. AFDC is a federal-state grant in aid program to provide financial assistance to eligible families with dependent minor children.

Public Law 339 of the Acts of the Indiana General Assembly of 1973 as enacted on April 26, 1973, provided in part as follows:

"Provided, however, on or before July 1, 1973, the State Department of Public Welfare is directed to apply a ratable reduction (not to exceed thirty-five per cent (35%)) of the financial standards used to determine minimum essential needs for recipients receiving benefits under Title IV of the federal social security act."

Pursuant to the directive of the General Assembly, the State Welfare Board adopted regulation 2–106, effective July 1, 1974, effectuating a 25% rateable reduction. The implementation of the rateable reduction caused some AFDC recipients to be stricken from the welfare rolls and reduced benefits to some other recipients. Plaintiff Clara Smith's benefits were reduced in amount because of the rateable reduction and she brought this action in behalf of herself and her minor children as well as seeking to have the action declared a class action for all of those similarly situated. The trial court found the action was properly maintainable as a class action and further found that notice to members of the class was not applicable and not required.

The trial court further found in favor of the plaintiff and against the defendants on the grounds that P.L. 339 failed to establish guidelines to guide the Welfare Board in the selection of the amount of rateable reduction. The Court found that by ordering reductions "not to exceed thirty-five per cent" the Legislature delegated power to make rateable reductions of financial standards used to determine minimum essential needs for recipients of benefits under Title IV of the Federal Social Security Act. This constituted an unconstitutional delegation of legislative power to the State Department of Public Welfare and that therefore the act was ineffective and void. The court later amended its judgment to find that welfare regulation 2–106, which applied the 25% rateable reduction pursuant to P.L. 339, was void and ordered defendants to pay the plaintiffs and further ordered defendants to pay all members of the class in plaintiff's situation such amounts of money as would have been paid to them but for the application of regulation 2–106. The trial court then granted defendant's motion for stay of execution of the judgment pending this appeal.

■ The question before us then is whether the legislature improperly delegated its authority to the Indiana Welfare Board by allowing the Board to set the actual figure of rateable reduction which it did set at 25%. An analysis of the federal and state statutes involved and the practices and procedures of the Indiana Welfare Board since its institution shows that there is no more authority given to it under P.L. 339 than it has always had. The same standards that were used to determine eligibility and amounts of benefits were still to be used by the Indiana Department of Welfare but it was to apply a 25% rateable reduction to those standards and amounts. This would be done by analyzing the needs in the area covered by AFDC and the amount of funds available. The State Welfare Board was the proper and most practical unit to make these determinations pursuant to the authority that it had always had and subject to the guidelines and maximums directed by the Legislature. The trial court accordingly erred when it found that P.L. 339 and regulation 2–106 unconstitutionally delegated legislative authority to the State Welfare Board and were void.

The Welfare Department was created by the Indiana General Assembly in 1936 for the following purposes:

"Act as the agent of the federal government in welfare matters of mutual concern in conformity with the provisions of this act and in the administration of

any federal funds granted to this state to aid in the furtherance of any such functions of the State government." Acts of 1936, Ch. 3, § 5(m) now codified as Ind. Code § 12–1–2–3(*1*) (Burns 1981)

In appropriating funds for the AFDC program the United States Congress stated in 42 U.S.C. § 601 (1974):

"§ 601 Authorization of appropriations

"For the purpose of encouraging the care of dependent children in their own homes or in the homes of relatives by enabling each State to furnish financial assistance and rehabilitation and other services, as far as practicable under the conditions in such State, to needy dependent children and the parents or relatives with whom they are living to help maintain and strengthen family life and to help such parents or relatives to attain or retain capability for the maximum self-support and personal independence consistent with the maintenance of continuing parental care and protection, there is authorized to be appropriated for each fiscal year a sum sufficient to carry out the purposes of this part. The sums made available under this section shall be used for making payments to States which have submitted, and had approved by the Secretary, State plans for and services to needy families with children."

The Welfare Department has taken on many duties since its inception as it applies to this area of its responsibility. The agency was authorized to comply with the requirements of the Social Security Act and do all things necessary to secure federal funds by Ind.Code § 12–1–2–12 and § 12–1–2–13 (Burns 1971). It is apparent that the United States Congress intended the AFDC program to provide as much financial assistance to needy dependent children as was practicable considering the financial condition of each State. The Federal regulations require the specification of statewide assistance in the following manner:

"§ 233.20 Need and amount of assistance.

(a) *Requirements for State Plans.* A State plan for OAA, AFDC, AB, APTD or AABD must, as specified below:

(1) *General.* Provide that the determination of need and amount of assistance for all applicants and recipients will be made on an objective and equitable basis and all types of income will be taken into consideration in the same way, except where otherwise specifically authorized by Federal statute.

(2) *Standards of assistance.* (i) Specify a statewide standard, expressed in money amounts, to be used in determining (*a*) the need of applicants and recipients and (*b*) the amount of the assistance payment."

45 C.F.R. § 233.20 (1974)

In 1936 the Indiana General Assembly accepted the Federal funds for the creation of an AFDC program and provided that the amount of assistance which should be granted should be sufficient in light of other income to provide such child with a reasonable subsistence compatible with decency and health. Thus, the authority, duties and responsibilities of the State Welfare Board were provided in Ind.Code § 12–1–2–2(d) as follows:

"(d) The state board shall be responsible for the establishment of minimum standards of assistance for old age and dependent children recipients, providing such standards relate to the state as a whole. The state board shall not establish standards of assistance limited to one [1] or several counties and in any county where a necessary change is made based upon the minimum standards fixed by the state board for the state as a whole, the order for the change shall be made in writing and shall be made a matter of permanent record in the state and county departments where such order shall be open to public inspection."

And Ind.Code 12–1–7–3, as written in 1974:

"The amount of assistance which shall be granted for any dependent child shall be determined by the county department with due regard to the resources and necessary expenditures of the family and the conditions existing in each case and in accordance with the rules and regulations

made by the state department, and shall be sufficient, when added to all other income and support available to the child, to provide the child with a reasonable subsistence compatible with decency and health, taking into consideration all needs essential to the well-being of the child. The total amount paid to any dependent child, other than for medical expenses, for any calendar month shall not exceed seventy-five dollars ($75.00), and the total amount paid to the person essential to the well-being of the dependent child, other than for medical expenses, for any calendar month shall not exceed seventy-five dollars ($75.00). The total amount paid to one (1) dependent child and to the person essential to the well-being of the dependent child, other than for medical expenses, for any calendar month shall not exceed one hundred fifty dollars ($150.00). If there is more than one (1) dependent child or children in the same home, the total amount paid, other than mere medical expenses, for any calendar month shall not exceed fifty dollars ($50.00) for each additional child or children; and if an incapacitated father of the children is living in the home, an amount not to exceed fifty dollars ($50.00) may be paid for the benefit of the incapacitated father. Age shall not be a factor in determining the need of a child. However, when any dependent child or children or the person or persons essential to the well-being of the child or children are found to be in need of medical care, payment for any necessary care may be included in the monthly award to the recipient, even though payment for the care may increase the amount of the monthly award in excess of the maximum amounts otherwise allowed by this section or payment for the care, regardless of any maximum monthly limitations in this section, may be made directly to the person, corporation, association, institution, or agency furnishing the care. These direct payments may be made during the lifetime of the child either before or after it reaches the maximum age of dependent children or after the death of such child, for care furnished before the child reaches the maximum age for dependent children."

(Amended 1975, P.L. 123, § 1; 1976, P.L. 48, § 2; 1977, P.L. 141, § 1; 1979, P.L. 124, § 1.)

█ We agree with defendants that the Indiana General Assembly by enacting these statutes delegated to the State Department of Public Welfare the authority to establish minimum standards of assistance for the program within the guidelines and maximum standards set out therein. We further feel the defendants have accurately stated that it is apparent from considering both state and federal statutes that the purpose of the AFDC program was to provide the highest assistance to most needy dependent children in light of state financial conditions. The State Welfare Department has always been required to meet these standards in the AFDC program and the enactments under consideration here do not change these requirements. The United States Supreme Court in *Rosado v. Wyman*, (1970) 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442, found that the Federal Congress in enactment of 42 U.S.C. § 602(a)(23) providing for aid to families with dependent children, that provisions of the Social Security Act gave authority to administer this program to the federal HEW. *Rosado* provided: "There are two basic factors that enter into the determination of what AFDC benefits will be paid: First, it is necessary to establish 'a standard of need,' a yardstick for measuring who is eligible for public assistance. Second, it must be decided how much assistance will be given, that is, what 'levels of benefits' will be paid. On both scores, Congress has always left to the States a great deal of discretion." *Id.* at 408, 90 S.Ct. at 1215. *Rosado* further provided that if the Department of Housing and Welfare found that a state was not properly using the federal monies allocated to it for a program such as AFDC that Department would be justified in withdrawing the federal funds granted to that state for that program. The HEW did provide for rateable reduction in state programs in 1969, when it enacted a new federal regulation which read as follows:

"In the AFDC plan, provide that by July 1, 1969, the State's standard of assistance for the AFDC program will have been adjusted to reflect fully changes in living costs since such standards were established, and any maximums that the State imposes on the amount of aid paid to families will have been proportionately adjusted. In such adjustment a consolidation of the standard (i. e., combining of items) may not result in a reduction in the content of the standard. In the event the State is not able to meet need in full under the adjusted standard, the State may make ratable reductions in accordance with subparagraph (3)(viii) of this paragraph."

45 C.F.R. § 233.20(a)(2)(ii)

Provide that payment will be based on the determination of the amount of assistance needed and that, if full individual payments are precluded by maximums or insufficient funds, adjustments will be made by methods applied uniformly statewide."

45 C.F.R. § 233.20(a)(3)(viii).

This regulation required the states to incorporate cost of living raises into their minimum standards of assistance. Because this would raise the amount of assistance payable, HEW provided that if the state could not meet this higher standard, it could institute an across the board rateable reduction. This means the state could reduce by a percentage its total need calculation to provide minimum standards of assistance payable in light of the appropriation by the state legislature for the AFDC program. As the defendants point out, the State of Indiana was still under the obligation codified in both state and federal law to provide minimum standards of assistance which would provide reasonable subsistence to the most needy children. The selection of a percentage rateable reduction could be governed only by this standard. Under 42 U.S.C. § 601 and 602, the state was required to submit a state plan for AFDC assistance to HEW. As a matter of fact, the state submits quarterly reports to HEW, fully detailing the amounts of assistance payable in the AFDC program. Following the enactment of P.L. 339, the Indiana State Welfare Board caused hearings to be held on the selection of a percentage rateable reduction. Following this hearing, the 25% rateable reduction was set by the Board as above indicated. The Attorney General of the State of Indiana and the Commission of the Governor were privy to the hearings regarding the determination of the percentage of rateable reduction; after its setting, the Attorney General, the Governor of Indiana, and the HEW approved the percentage selected. Plaintiffs properly point out that approval by any and all of these offices does not necessarily make the action legal or constitutional. It does, however, indicate that the action taken was subject to sufficient input and control to prevent arbitrary action. Within P.L. 339 can be found legislative intent that the welfare department continue to act under a reasonable subsistence standard from the original delegation of power to the present. P.L. 339 could not change the basic policy standards set by the Legislature but indicated that the intent and policy of the Legislature was that there be a rateable reduction of the end amounts and set the maximum of that reduction at 35%. The Legislature cannot delegate its power to make a law; but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend. *Blue v. Beach*, (1900) 155 Ind. 121, 56 N.E. 89. An administrative body can be delegated the responsibility, methods, or details necessary to implement the law enacted by the Legislature. This Court has held that the Legislature may delegate authority to an administrative agency if the legislature lays down in the same statute a reasonable standard to guide that discretion. *Kryder v. State*, (1938) 214 Ind. 419, 15 N.E.2d 386. We have further held that the standard set in the statute to guide the administrative board can be found within the four corners of the statute itself or can be found within other statutes that apply to the conduct and authority of the administrative unit. *Benton County Council v. State*, (1946) 224 Ind. 114, 65 N.E.2d 116. It was stated in *Benton* :

"The statute under consideration also provides that his salary may be increased to an amount which in the judgment of the majority of the township trustees may seem proper. It is our opinion that this provision of the statute means the same as if it had said that the trustees should fix a salary which is reasonable and is analogous to legislation regulating public utilities which often provides that rates and charges fixed by administrative boards shall be reasonable. As was said in *Kryder v. State,* supra, 'Legislation of this character is sustained upon the theory that it is proper for the legislature to delegate to such boards and officers the function to determine what is or what is not reasonable under the particular facts.'"

*Id.* at 121, 65 N.E.2d at 119.

In *Ennis v. State Highway Commission,* (1952) 231 Ind. 311, 108 N.E.2d 687, this Court approved the authority given by the legislature to the Indiana Toll Road Commission to locate toll roads. This authority came under the same attack of delegation of legislative power with no standard that we face in the present statute. It was found therein that the legislative delegation was proper since the governor had to approve the location fixed by the Indiana Toll Road Commission and another administrative agency had to approve the decision and that there were guidelines in another statute to guide the approval of the second agency. *See also Wampler v. Trustees of Indiana University,* (1961) 241 Ind. 449, 172 N.E.2d 67. The case of *Taxpayers Lobby of Indiana, Inc., v. Orr,* (1974) 262 Ind. 92, 311 N.E.2d 814 concerned the sales tax that provided for an exemption for sales of food for human consumption. No definition was given to the term food but the statute listed some items as exempt and some as not. Again, this provision was attacked as an improper delegation of legislative authority to the tax department to make the determinations of which foods would be exempt and which would not. This Court sustained the food exemption because we found that there were workable standards in the provision.

Defendants put into evidence in this cause facts and figures showing the workability of the AFDC plan with the rateable reduction. The legislature gave proper and sufficient guidelines to the Welfare Department in its operations from its institution in 1936 up to and including P.L. 339. P.L. 339 did not unconstitutionally delegate legislative power and authority to the Indiana Welfare Department. The trial court was in error in finding Public Law 339 unconstitutional and void and Indiana Board of Public Welfare regulation 2–106 ineffective and void. It therefore erred in further ordering the plaintiff and all members of the class be paid the same amounts they would have received but for the passage of P.L. 339 and the enforcing of welfare regulation 2–106.

This cause is remanded to the trial court with orders to amend this judgment consistent with this opinion.

GIVAN, C. J., and DeBRULER, HUNTER and PRENTICE, JJ., concur.