ATTORNEYS FOR APPELLANT
David L. Swider
Bryan H. Babb
Bose McKinney & Evans LLP
Indianapolis, Indiana

Patrick T. Gillen
Naples, Florida

Thomas L. Brejcha
Peter C. Breen
Thomas More Society
Chicago, Illinois

ATTORNEYS FOR APPELLEE
Nelson A. Nettles
Cynthia E. Lasher
Norris Choplin Schroeder LLP
Indianapolis, Indiana

ATTORNEY FOR AMICI CURIAE
Michael C. Healy
Indiana Civil Rights Commission
Indianapolis, Indiana



FILED

Jan 06 2015, 11:43 am

CLERK
of the supreme court,
court of appeals and
tax court

## In the
## Indiana Supreme Court

No. 93S02-1310-EX-704

FISHERS ADOLESCENT CATHOLIC ENRICHMENT SOCIETY, INC.,
*Appellant / Cross-Appellee (Respondent below)*,

v.

ELIZABETH BRIDGEWATER O/B/O ALYSSA BRIDGEWATER,
*Appellee / Cross-Appellant (Complainant below)*.

Appeal from Final Order of the Indiana Civil Rights Commission
Nos. EDha08100620 & EDrt08110681
The Honorable Robert D. Lange, Administrative Law Judge

On Transfer from the Indiana Court of Appeals, No. 93A02-1202-EX-145

**January 6, 2015**

**Dickson, Justice.**

The authority of the Indiana Civil Rights Commission is limited to that delegated by statute. Here, in responding to allegations of discrimination arising from an inter-group squabble

over the type of meal to be served to a group member's allergic child, the Commission exceeded its authority because the alleged discriminatory practice did not relate to education, a statutory prerequisite for the Commission's exercise of authority.

Fishers Adolescent Catholic Enrichment Society, Inc. (FACES)[1] was formed in 2006 by two Catholic mothers. At the time this dispute arose, FACES was comprised of a group of a dozen or so families who had associated together "to provide homeschool high schoolers with Catholic educational, spiritual, and social enrichment." Record Vols. 4, 6 at 431, 988. These opportunities included classes in academic subject matter as well as a Right to Life March and social events such as paintball and laser tag, ski trips, and holiday parties. Record Vol. 12 at 255. FACES accepts members from varying faiths, although, at the time this action was brought, only two of the eleven families and one instructor was non-Catholic. Record Vols. 4, 12 at 431, 257 and 259.

In fall 2008, FACES planned an "All Souls' Day Masquerade Ball" dinner-dance social event to coincide with the Catholic feast day of All Souls' Day on November 2.[2] FACES's intent, motivated by an article in the National Catholic Register, was "to put the focus on [their] Catholic holidays as opposed to the focus of Halloween." Record Vols. 4, 5 at 443, 694. In planning the event, a FACES member parent, Mrs. Bridgewater, requested special dietary accommodations for her daughter who planned to attend. Her daughter suffers from a dietary condition that can cause a life-threatening allergic reaction in which her ability to breathe and swallow would be impaired or even stopped altogether if she ate certain foods including chicken. When Mrs. Bridgewater learned that the menu for the dinner-dance included chicken, she requested that her daughter be served a steak. After FACES declined that request, Mrs. Bridgewater again requested a steak, offering to pay the price difference, or in the alternative, a hamburger. FACES denied that request as well but granted Mrs. Bridgewater's subsequent request to permit her daughter to bring her own dinner, although there would be no ticket-price adjustment to account for her daughter not needing the included dinner. The dispute continued. On October 8, 2008,

---

[1] Fishers Adolescent Catholic Enrichment Society, Inc. is registered as an Indiana non-profit corporation and recognized under section 501(c)(3) of the Internal Revenue Code.

[2] All Souls Day is a solemn feast in the Roman Catholic Church commemorating all of those who have died. It is celebrated annually on November 2. Francis Mershman, *All Souls' Day*, 1 THE CATHOLIC ENCYCLOPEDIA (Robert Appleton Co. 1907), *available at* http://www.newadvent.org/cathen/01315b.htm.

Mrs. Bridgewater changed her mind and made another request that her daughter be served a beef meal prepared by the event venue, but was again rebuffed. The next day, Mrs. Bridgewater on behalf of her daughter, filed a complaint with the Commission, alleging FACES refused a reasonable accommodation for her daughter and therefore discriminated against her due to her disability. Ultimately, even although FACES had instructed her not to contact the event venue, Mrs. Bridgewater made arrangements with the event venue for her daughter to be served a separate meal, which she paid for. Her daughter attended the dinner-dance without incident, but four days later on November 6, FACES expelled the Bridgewater family. Mrs. Bridgewater then filed a second complaint with the Commission, alleging FACES expelled the Bridgewater family in unlawful retaliation for filing the disability discrimination claim.

FACES filed a motion to dismiss both the claims on the basis that the Commission did not have subject-matter jurisdiction over FACES under Indiana's Civil Rights Law because FACES was a religious organization—not an educational one as Mrs. Bridgewater claimed. After a hearing, an administrative law judge for the Commission denied the motion to dismiss on the ground that the Commission had jurisdiction because FACES as a group related to education. The Commission affirmed and consolidated the disability and retaliatory discrimination claims for further proceedings. The administrative law judge later entered an order with findings of fact and conclusions of law, concluding that FACES did not commit an unlawful discriminatory practice because it had provided a reasonable accommodation for Mrs. Bridgewater's daughter's dietary needs—but that FACES did commit an unlawful discriminatory practice when it expelled the Bridgewater children after they filed the disability discrimination complaint. The administrative law judge ruled that Mrs. Bridgewater's daughter should be awarded $5,000 in damages and that FACES should take corrective action. Order, Appellant's App'x at 523. Both parties appealed the order to the Commission. FACES challenged the administrative law judge's conclusions regarding jurisdiction, retaliation, and corrective action. The Bridgewaters challenged the administrative law judge's conclusions regarding the disability accommodation and damages. The Commission issued its final order, incorporating the administrative law judge's rulings in all respects, except for reducing damages.

FACES appealed, and Mrs. Bridgewater cross-appealed. The Court of Appeals affirmed

3

in part and reversed in part.  *See* Fishers Adolescent Catholic Enrichment Soc'y, Inc. v. Bridgewater ex rel. Bridgewater, 990 N.E.2d 29, 49 (Ind. Ct. App. 2013), *trans. granted*, *vacated*.  The Court of Appeals reversed the Commission's order requiring FACES to post a link to the Commission's final order on numerous websites but affirmed the Commission's order in all other respects.  *Id.*  Having previously granted transfer, we address FACES's dispositive claim that the Commission lacked authority to take any action other than the dismissal of the disability and retaliatory discrimination claims.

The Legislature may delegate authority to an administrative agency through a valid statute that sets out a reasonable standard to guide that discretion, but the agency exercises such authority subject to the confines of its enabling statute.  Stanton v. Smith, 429 N.E.2d 224, 228 (Ind. 1981).  Such limiting standard may be found "within the four corners of the statute itself or can be found within other statutes that apply to the conduct and authority of the administrative unit."  *Id.*  The Commission's authority is limited by the Administrative Orders and Procedures Act, and this Court must grant relief if we determine that "a person seeking judicial relief has been prejudiced by an agency action that is . . . in excess of statutory jurisdiction, authority, or limitations."  Ind. Code § 4-21.5-5-14(d)(3).

The Indiana Civil Rights Law explicitly conditions the Commission's exercise of its enforcement powers to incidents where a person has "engaged in an *unlawful* discriminatory practice."  Ind. Code § 22-9-1-6(j)[3] (emphasis added).  To be "unlawful" under the Law, the discriminatory practice must relate to "the acquisition or sale of real estate, *education*, public accommodations, employment, or the extending of credit."  Ind. Code § 22-9-1-3(l) (emphasis added).  As to these enumerated prerequisite criteria for Commission action, it is only "education" that is the claimed basis of Mrs. Bridgewater's discrimination claims.

There is no factual dispute that the purpose of FACES, as described in its bylaws, is "to provide homeschool high schoolers with Catholic educational, spiritual, and social enrichment."

---

[3] This opinion cites Indiana Code subsections 22-9-1-6(g), (j), and (l) as identified in the 2014 codification.  These subsections were previously designated as (h), (k), and (m) and renumbered in 2012 and 2014 with no change in substance.

Record Vol. 6 at 988; *see also* Record Vol. 12 at 231 ("FACE[S] achieves [its] religious mission by shaping its activities to foster the development of homeschooling families in a manner consistent with the teaching of the Catholic Church on matters of faith and morals."); Record Vol. 12 at 234 ("The intent of FACES is to provide Catholic homeschooling families with fraternal support and solidarity as Catholic families try to raise their children in light of the Catholic faith."). As these statements of purpose imply, the predominant purpose of FACES is to promote and foster its member families' Catholic faith in various aspects of their childrens' lives; education is but one aspect. The dinner-dance at which Mrs. Bridgewater contends that FACES failed to accommodate her daughter's food allergy furthered the FACES members' objective of providing Catholic spiritual and social enrichment. It was not an occasion for the teaching of academic subjects as part of the student's curriculum. FACES planned the "All Souls' Day Masquerade Ball" dinner-dance social event to coincide with the Catholic feast day of All Souls' Day on November 2. The alleged disability discrimination thus occurred at a quasi-religious social function, not an educational one. To expansively interpret "relating to . . . education," *see* Ind. Code § 22-9-1-3(l), to apply to this dinner would convert almost every occasion of parental guidance and training into an activity "related to education." This would eviscerate the function of "related to education" as a legislative prerequisite for the Commission's enforcement powers.

Because the alleged discriminatory practice in this case does not relate to education, Mrs. Bridgewater's claim of disability discrimination fell outside the statutory authority of the Commission. It likewise follows that the Commission also lacked authority to find that "FACES committed an unlawful discriminatory practice when it expelled the Bridgewater family because of the filing of the original complaint," Conclusion of Law No. 14, Appellant's App'x at 522, and ordered the imposition of remedial sanctions against FACES. The Commission's statutory power to "prevent any person from discharging, expelling, or otherwise discriminating against any other person because the person filed a complaint," Ind. Code § 22-9-1-6(g), is necessarily limited by Indiana Code section 22-9-1-6(j), which preconditions the Commission's power to act to incidents where a person has "engaged in an *unlawful* discriminatory practice." Ind. Code § 22-9-1-6(j) (emphasis added); *see also* § 22-9-1-6(l). As discussed above, under the facts of this case, any unlawful discriminatory practice must be related to education. Here, the claim of retaliatory discrimination is predicated on Mrs. Bridgewater's assertion of a claim that the failure

5

to provide special food constituted disability discrimination. Because this disability discrimination claim is not related to education and thus falls outside the Commission's enforcement powers, the derivative retaliatory discrimination claim is also beyond the Commission's authority to impose any remedial sanctions against FACES. This is particularly apparent from the four corners of the Indiana Civil Rights Law. Neither the disability discrimination claim nor the retaliatory discrimination claim are related to education, and thus the Commission has exceeded its statutory authority.

Furthermore, it bears noting that the statutory language authorizing Commission action to remedy an alleged retaliatory discrimination should not be expansively construed to expand the powers of the Commission beyond the types of discrimination expressly enumerated in the Law. To hold otherwise would invite and incentivize the intimidating technique of bootstrapping a retaliation claim onto a meritless complaint alleging discrimination not subject to the Law. *See* Ind. Code § 22-9-1-2.

"It is 'the duty of the court not to enter upon the consideration of a constitutional question where the court can perceive another ground on which it may properly rest its decision.'" Bayh v. Sonnenburg, 573 N.E.2d 398, 402 (Ind. 1991) (quoting Bureau of Motor Vehicles v. Scott, 497 N.E.2d 557, 559 (Ind. 1986)). Because the Commission lacked statutory authority to act upon both the disability discrimination claim and the claim of exclusion from membership in retaliation for asserting the disability discrimination claim, both claims should have been dismissed as exceeding the authority of the Commission, and it is therefore unnecessary to address any further issues, constitutional or otherwise.

In this case, the Commission considered the merits of Mrs. Bridgewater's disability discrimination claim but dismissed this claim after determining that FACES "met its burden of making a reasonable accommodation . . . by agreeing to allow food to be brought from home." Conclusion of Law No. 8, Appellant's App'x at 521. As to the retaliation discrimination claim, the Commission found that FACES committed an unlawful discriminatory practice and ordered remedial sanctions. The Commission's consideration of the merits of either discrimination claim was clearly erroneous because both claims fell outside the Commission's statutory authority and

6

thus should have been dismissed outright.  *See* Ind. Code § 4-21.5-5-14(d); <u>Regester v. Ind. State Bd. of Nursing</u>, 703 N.E.2d 147, 151 (Ind. 1998) (stating that a reviewing court may vacate an administrative board's decision when "the conclusions reached by the board are clearly erroneous").

## Conclusion

The Commission lacked authority to take any action other than the dismissal of these claims arising from an intra-group squabble over the type of meal to be served to a member family's child at an "All Souls' Day Masquerade Ball" dinner-dance social event—an incident not related to education and thus not within the Commission's prerequisite statutory authority.  We vacate the Commission's final order and remand this cause with instructions to grant the motion to dismiss filed by FACES as to both claims.

Rush, C.J., and David and Massa, JJ., concur.
Rucker, J., dissents in part with separate opinion.

**Rucker, J., dissenting in part.**

I agree with the majority that the Bridgewater disability *discrimination* claim fails because the alleged discriminatory practice—excluding one of the Bridgewater children from a meal at the Masquerade Ball due to her disability—did not "relat[e] . . . to education" within the meaning of Indiana's Civil Rights Act. Ind. Code § 22-9-1-3(l). However, I disagree that the Bridgewater *retaliation* claim is somehow derivative of and thus depends upon the disposition of the discrimination claim. Therefore on this issue I respectfully dissent.

Indiana's Civil Rights Act reflects the State's public policy to:

> provide all of its citizens equal opportunity for education, employment, access to public conveniences and accommodations, and acquisition through purchase or rental of real property, including but not limited to housing, and to eliminate segregation or separation based solely on race, religion, color, sex, disability, national origin or ancestry, since such segregation is an impediment to equal opportunity. . . . The practice of denying these rights to properly qualified persons by reason of the race, religion, color, sex, disability, national origin, or ancestry of such person is contrary to the principles of freedom and equality of opportunity and is a burden to the objectives of the public policy of this state and shall be considered as discriminatory practices.

I.C. § 22-9-1-2(a), (b). The Indiana Civil Rights Commission was created under the auspices of the Civil Rights Act and is afforded certain authority and charged with certain responsibilities, including the responsibility to "receive and investigate complaints alleging discriminatory practices" and to "prevent any person from discharging, expelling, or otherwise discriminating against any other person because the person filed a complaint, testified in any hearing before this commission, or in any way assisted the commission in any matter under its investigation." I.C. § 22-9-1-6(d), (g).

The majority takes the position that because the activities at issue did not "relate to education" the Commission had no authority to do anything other than dismiss the Bridgewater complaint. I cannot agree. Importantly, the Act prohibits "any person" from engaging in acts of discrimination. I.C. § 22-9-1-6(g). And a person is defined in part as "one (1) or more individuals,

partnerships, associations, organizations, limited liability companies, corporations, labor organizations . . . and other organized groups of persons." I.C. § 22-9-1-3(a). FACES certainly falls within the definition of the Act. To be sure there is a carve-out for certain employers. For example although the Act makes it unlawful for an *employer* to discriminate against its employee, excluded from the definition of "employer" is "any school, educational, or charitable religious institution owned or conducted by or affiliated with a church or religious institution." I.C. § 22-9-1-3(h)(2). But the assertion here is not a claim based on employment discrimination. And in any case FACES does not contend it was acting as an employer with respect to Mrs. Bridgewater's daughter.[1]

Further, the import of the majority's holding is that retaliation is only a "discriminatory practice" when it is committed in response to the filing of a *meritorious* complaint with the Commission. I make two observations: First, correctly noting this is a matter of first impression, the Court of Appeals concluded "FACES is sufficiently related to education such that the ICRC's jurisdiction is proper." Fishers Adolescent Catholic Enrichment Soc'y, Inc. v. Bridgewater, 990 N.E.2d 29, 41 (Ind. Ct. App. 2013), vacated. And although the Court disagrees with our colleagues on this point, a respectable argument can be made that a good education is not composed solely of "the three Rs—reading, [']riting, and [']rithmetic."[2] Rather, it also includes social skills.[3] In essence, one could reach the reasonable conclusion that the meal at the Ball "relates to education" and thus the Bridgewater complaint falls with the plain wording of the Civil Rights Act.

The facts of this case make clear the Bridgewater complaint was certainly not "meritless" as the majority contends. And the Commission was quite correct in entertaining and providing a

---

[1] The majority seems to imply that the homeschooling/religious character of FACES exempts the organization from the reach of Indiana's Civil Rights Act. See slip op. at 4-5. It does not, although the Legislature could certainly do so if deemed appropriate.

[2] Christine Ammer, The American Heritage Dictionary of Idioms 457 (2d ed. 2013).

[3] See Ind. Dep't of Educ., Indiana Academic Standards for Health & Wellness 79 (2010), available at www.doe.in.gov/sites/default/files/standards/health-and-wellness/2010_health_education_standards_literacy.pdf ("Students will demonstrate the ability to use interpersonal communication skills to enhance health and avoid or reduce health risks. . . . This standard focuses on how responsible individuals use verbal and non-verbal skills to develop and maintain healthy personal relationships.").

2

remedy in favor of the Bridgewaters when FACES expelled the family in retaliation for filing the complaint in the first place. Second, the retaliation language in the statute itself says nothing about an alleged "meritorious" complaint. Instead it tasks the Commission with the responsibility of "investigat[ing] complaints *alleging* discriminatory practices" and giving it authority to prevent retaliation "because the person filed *a complaint*, testified in any hearing before this commission, *or in any way assisted the commission* in any matter under its investigation." I.C. § 22-9-1-6(d), (g) (emphases added).

In addition, the majority's view is also inconsistent Federal retaliation precedent.[4] In the federal context, all that is required for a complainant to succeed on a retaliation claim is that he or she reasonably believed in good faith that the complained-of practice was discriminatory. See, e.g., Fine v. Ryan Int'l Airlines, 305 F.3d 746, 752 (7th Cir. 2002) (even where district court found complainant's discrimination claim failed as a matter of law, she could still prevail on her retaliation claim); Wilkins v. St. Louis Hous. Auth., 314 F.3d 927, 933 (8th Cir. 2002) (recognizing that the Fifth, Seventh, Eighth, and Ninth Circuits have all used a reasonable-belief standard in the Title VII retaliation context).

Essentially, retaliation under the Act is a separate act of discrimination regardless of the outcome on the merits of the underlying complaint. Thus even though FACES prevailed on Bridgewater's disability discrimination claim, it was nonetheless subject to the Bridgewater retaliation discrimination claim. See Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 180-81 (2005) (recognizing that the objective of preventing discriminatory practices "would be difficult, if not impossible, to achieve if persons who complain about . . . discrimination did not have effective protection against retaliation. . . . Without protection from retaliation, individuals who witness discrimination would likely not report it . . . and the underlying discrimination would go unremedied" (internal quotation omitted)).

---

[4] "In construing Indiana civil rights law our courts have often looked to federal law for guidance." Filter Specialists, Inc. v. Brooks, 906 N.E.2d 835, 839 (Ind. 2009) (citing cases).

Today the majority rewrites Indiana's Civil Rights Act, places an untenable burden on the Commission, and along the way ignores without explanation relevant federal precedent. I therefore cannot join its opinion. Instead I would affirm in part the Commission's decision.[5]

---

[5] More specifically the Commission ordered FACES to take several remedial measures: (1) cease and desist from retaliating against persons because they filed a complaint with the ICRC; (2) post a link to the Commission's order on all websites on which FACES communicated information about the case; (3) pay emotional distress damages to the daughter of Mrs. Bridgewater in the amount of $2500; and (4) offer reinstatement of the Bridgewater family to full membership in FACES. I would reverse the Commission on this latter point as a violation of FACES' constitutional right of intimate association. See generally Roberts v. U.S. Jaycees, 468 U.S. 609, 612 (1984) ("address[ing] a conflict between a state's efforts to eliminate gender-based discrimination against its citizens and the constitutional freedom of association asserted by members of a private group").

4