DICKSON, Justice.
The authority of the Indiana Civil Rights Commission is limited to that delegated by statute. Here, in responding to allegations of discrimination arising from an intra-group squabble over the type of meal to be served to a group member’s allergic child, the Commission exceeded its authority because the alleged discriminatory practice did not relate to education, a statutory prerequisite for the Commission’s exercise of authority.
Fishers Adolescent Catholic Enrichment Society, Inc. (FACES)[1] was formed in 2006 by two Catholic mothers. At the time this dispute arose, FACES was comprised of a group of a dozen or so families who had associated together “to provide homeschool high schoolers with Catholic educational, spiritual, and social enrichment.” Record Vols. 4, 6 at 431, 988. These opportunities included classes in academic subject matter as well as a Right to Life March and social events such as paintball and laser tag, ski trips, and holiday parties. Record Vol. 12 at 255. FACES accepts members from varying faiths, although, at the time this action was brought, only two of the eleven families and one instructor was non-Catholic. Record Vols. 4,12 at 431, 257 and 259.
In fall 2008, FACES planned an “All Souls’ Day Masquerade Ball” dinner-dance social event to coincide with the Catholic feast day of All Souls’ Day on November 2.[2] FACES’s intent, motivated by an article in the National Catholic Register, was “to put the focus on [their] Catholic holidays as opposed to the focus of Halloween.” Record Vols. 4, 5 at 443, 694. In planning the event, a FACES member parent, Mrs. Bridgewater, requested special dietary accommodations for her daughter who planned to attend. Her daughter suffers from a dietary condition that can cause a life-threatening allergic reaction in which her ability to breathe and swallow would be impaired or even stopped altogether if she ate certain foods including chicken. When Mrs. Bridgewa-ter learned that the menu for the dinner-dance included chicken, she requested that her daughter be served a steak. After FACES declined that request, Mrs. Bridgewater again requested a steak, offering to pay the price difference, or in the alternative, a hamburger. FACES denied that request as well but granted Mrs. Bridgewater’s subsequent request to permit her daughter to bring her own dinner, although there would be no ticket-price adjustment to account for her daughter not needing the included dinner. The dispute continued. On October 8, 2008, Mrs. Bridgewater changed her mind and made another request that her daughter be served a beef meal prepared by the event venue, but was again rebuffed. The next day, Mrs. Bridgewater on behalf of her daughter, filed a complaint with the Commission, alleging FACES refused a reasonable accommodation for her daughter and therefore discriminated against her due to her disability. Ultimately, even although FACES had instructed her not to contact *3 the event venue, Mrs. Bridgewater made arrangements with the event venue for her daughter to be served a separate meal, which she paid for. Her daughter attended the dinner-dance without incident, but four days later on November 6, FACES expelled the Bridgewater family. Mrs. Bridgewater then filed a second complaint with the Commission, alleging FACES expelled the Bridgewater family in unlawful retaliation for filing the disability discrimination claim.
FACES filed a motion to dismiss both the claims on the basis that .the Commission did not have subject-matter jurisdiction over FACES under Indiana’s Civil Rights Law because FACES was a religious organization — not an educational one as Mrs. Bridgewater claimed. After a hearing, an administrative law judge for the Commission denied the motion to dismiss on the ground that the Commission had jurisdiction because FACES as a group related to education. The Commission affirmed and consolidated the disability and retaliatory discrimination claims for further proceedings. The administrative law judge later entered an order with findings of fact and conclusions of law, concluding that FACES did not commit an unlawful discriminatory practice because it had provided a reasonable accommodation for Mrs. Bridgewater’s daughter’s dietary needs — but that FACES did commit an unlawful discriminatory practice when it expelled the Bridgewater children after they filed the disability discrimination complaint. The administrative law judge ruled that Mrs. Bridgewater’s daughter should be awarded $5,000 in damages and that FACES should take corrective action. Order, Appellant’s App’x at 528. Both parties appealed the order to the Commission. FACES challenged the administrative law judge’s conclusions regarding jurisdiction, retaliation, and corrective action. The Bridgewaters challenged the administrative law judge’s conclusions regarding the disability accommodation and damages. The Commission issued its final order, incorporating the administrative law judge’s rulings in all respects, except for reducing damages.
FACES appealed, and Mrs. Bridgewater cross-appealed. The Court of Appeals affirmed in part and reversed in part. See Fishers Adolescent Catholic Enrichment Soc’y, Inc. v. Bridgewater ex rel. Bridgewater, 990 N.E.2d 29, 49 (Ind.Ct.App.2013), trans. granted, vacated. The Court of Appeals reversed the Commission’s order requiring FACES to post a link to the Commission’s final order on numerous websites but affirmed the Commission’s order in all other respects. Id. Having previously granted transfer, we address FACES’s dispositive claim that the Commission lacked authority to take any action other than the dismissal of the disability and retaliatory discrimination claims.
The Legislature may delegate authority to an administrative agency through a valid statute that sets out a reasonable standard to guide that discretion, but the agency exercises such authority subject to the confines of its enabling statute. Stanton v. Smith, 429 N.E.2d 224, 228 (Ind.1981). Such limiting standard may be found “within the four corners of the statute itself or can be found within other statutes that apply to the conduct and authority of the administrative unit.” Id. The Commission’s authority is limited by the Administrative Orders and Procedures Act, and this Court must grant relief if we determine that “a person seeking judicial relief has been prejudiced by an agency action that is ... in excess of statutory jurisdiction, authority, or limitations.” Ind.Code § 4-21.5-5-14(d)(8).
The Indiana Civil Rights Law explicitly conditions the Commission’s exercise of its *4 enforcement powers to incidents where a person has “engaged in an unlawful discriminatory practice.” Ind.Code § 22-9-1 — 6(j)[3] (emphasis added). To be “unlawful” under the Law, the discriminatory practice must relate to “the acquisition or sale of real estate, education, public accommodations, employment, or the extending of credit.” Ind.Code § 22-9-1-3(1) (emphasis added). As to these enumerated prerequisite criteria for Commission action, it is only “education” that is the claimed basis of Mrs. Bridgewater’s discrimination claims.
There is no factual dispute that the purpose of FACES, as described in its bylaws, is “to provide homeschool high schoolers with Catholic educational, spiritual, and social enrichment.” Record Vol. 6 at 988; see also Record Vol. 12 at 231 (“FACE[S] achieves [its] religious mission by shaping its activities to foster the development of homeschooling families in a manner consistent with the teaching of the Catholic Church on matters of faith and morals.”); Record Vol. 12 at 234 (“The intent of FACES is to provide Catholic homeschooling families with fraternal support and solidarity as Catholic families try to raise their children in light of the Catholic faith.”). As these statements of purpose imply, the predominant purpose of FACES is to promote and foster its member families’ Catholic faith in various aspects of their childrens’ lives; education is but one aspect. The dinner-dance at which Mrs. Bridgewater contends that FACES failed to accommodate her daughter’s food allergy furthered the FACES members’ objective of providing Catholic spiritual and social enrichment. It was not an occasion for the teaching of academic subjects as part of the student’s curriculum. FACES planned the “All Souls’ Day Masquerade Ball” dinner-dance social event to coincide with the Catholic feast day of All Souls’ Day on November 2. The alleged disability discrimination thus occurred at a quasi-religious social function, not an educational one. To expansively interpret “relating to ... education,” see Ind.Code § 22-9-1-3(1), to apply to this dinner would convert almost every occasion of parental guidance and training into an activity “related to education.” This would eviscerate the function of “related to education” as a legislative prerequisite for the Commission’s enforcement powers.
Because the alleged discriminatory practice in this case does not relate to education, Mrs. Bridgewater’s claim of disability discrimination fell outside the statutory authority of the Commission. It likewise follows that the Commission also lacked authority to find that “FACES committed an unlawful discriminatory practice when it expelled the Bridgewater family because of the filing of the original complaint,” Conclusion of Law No. 14, Appellant’s App’x at 522, and ordered the imposition of remedial sanctions against FACES. The Commission’s statutory power to “prevent any person from discharging, expelling, or otherwise discriminating against any other person because the person filed a complaint,” Ind.Code § 22-9-l-6(g), is necessarily limited by Indiana Code section 22-9 — 1—6(j), which preconditions the Commission’s power to act to incidents where a person has “engaged in an unlawful discriminatory practice.” Ind.Code § 22-9-1 — 6(j) (emphasis added); see also § 22-9-1-6(1). As discussed above, under the facts of this case, any unlawful discriminatory practice must be related to education. Here, the claim of retaliatory discrimina *5 tion is predicated on Mrs. Bridgewater’s assertion of a claim that the failure to provide special food constituted disability discrimination. Because this disability discrimination claim is not related to education and thus falls outside the Commission’s enforcement powers, the derivative retaliatory discrimination claim is also beyond the Commission’s authority to impose any remedial sanctions against FACES. This is particularly apparent from the four corners of the Indiana Civil Rights Law. Neither the disability discrimination claim nor the retaliatory discrimination claim are related to education, and thus the Commission has exceeded its statutory authority.
Furthermore, it bears noting that the statutory language authorizing Commission action to remedy an alleged retaliatory discrimination should not be expansively construed to expand the powers of the Commission beyond the types of discrimination expressly enumerated in the Law. To hold otherwise would invite and incen-tivize the intimidating technique of bootstrapping a retaliation claim onto a merit-less complaint alleging discrimination not subject to the Law. See Ind.Code § 22-9-1-2.
“It is ‘the duty of the court not to enter upon the consideration of a constitutional question where the court can perceive another ground on which it may properly rest its decision.’ ” Bayh v. Sonnenburg, 573 N.E.2d 398, 402 (Ind.1991) (quoting Bureau of Motor Vehicles v. Scott 497 N.E.2d 557, 559 (Ind.1986)). Because the Commission lacked statutory authority to act upon both the disability discrimination claim and the claim of exclusion from membership in retaliation for asserting the disability discrimination claim, both claims should have been dismissed as exceeding the authority of the Commission, and it is therefore unnecessary to address any further issues, constitutional or otherwise.
In this case, the Commission considered the merits of Mrs. Bridgewater’s disability discrimination claim but dismissed this claim after determining that FACES “met its burden of making a reasonable accommodation ... by agreeing to allow food to be brought from home.” Conclusion of Law No. 8, Appellant’s App’x at 521. As to the retaliation discrimination claim, the Commission found that FACES committed an unlawful discriminatory practice and ordered remedial sanctions. The Commission’s consideration of the merits of either discrimination claim was clearly erroneous because both claims fell outside the Commission’s statutory authority and thus should have been dismissed outright. See Ind.Code § 4—21.5—5—14(d); Regester v. Ind. State Bd. of Nursing, 703 N.E.2d 147, 151 (Ind.1998) (stating that a reviewing court may vacate an administrative board’s decision when “the conclusions reached by the board are clearly erroneous”).
Conclusion
The Commission lacked authority to take any action other than the dismissal of these claims arising from an intra-group squabble over the type of meal to be served to a member family’s child at an “All Souls’ Day Masquerade Ball” dinner-dance social event — an incident not related to education and thus not within the Commission’s prerequisite statutory authority. We vacate the Commission’s final order and remand this cause with instructions to grant the motion to dismiss filed by FACES as to both claims.
RUSH, C.J., and DAVID and MASSA, JJ., concur.
RUCKER, J., dissents in part with separate opinion.

. Fishers Adolescent Catholic Enrichment Society, Inc. is registered as an Indiana nonprofit corporation and recognized under section 501(c)(3) of the Internal Revenue Code.

. All Souls Day is a solemn feast in the Roman Catholic Church commemorating all of those who have died. It is celebrated annually on November 2. Francis Mershman, All Souls’ Day, 1 The Catholic Encyclopedia (Robert Appleton Co. 1907), available at http:// www.newadvent.org/cathen/01315b.htm.

. This opinion cites Indiana Code subsections 22-9-l-6(g), (j), and (1) as identified in the 2014 codification. These subsections were previously designated as (h), (k), and (m) and renumbered in 2012 and 2014 with no change in substance.